**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Luther G. SEVIER, Appellee.**

No. 3164.

Court of Civil Appeals of Texas. Eastland.

May 13, 1955.

Rehearing Denied June 3, 1955.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Smith & Smith, Anson, Thomas & Thomas, Big Spring, for appellee.

COLLINGS, Justice.

This is a workmen's compensation case. Luther G. Sevier brought suit against Texas Employers' Insurance Association to recover compensation for injuries alleged to have been sustained in the course of his employment as an employee of Admore Drilling Company, Inc. The case was tried before a jury and judgment entered on its verdict awarding Sevier compensation for total and permanent disability in the amount of $8,030.50. Texas Employers' Insurance Association has appealed.

Appellee alleged in his petition as plaintiff that on or about October 25, 1953, while employed and in the course of his employment with Admore Drilling Company, the stepladder of an oil well derrick on which he was working fell and struck him on his back, right side, right shoulder, hip and right leg, and created serious injury by bruising and mashing said portions of his body, and bruised his right hip bones and caused him to suffer severe pain in that portion of his body. He alleged that by reason of such injuries he became totally and permanently disabled.

In its answer appellant insurance company denied generally appellee's allegations and alleged that if appellee did suffer the claimed injury that the injury and any resulting disability was confined to his right leg; that the disability, if any he had, was the result of prior injury or disease arising independently of and disconnected with the injury complained of.

It was found by the jury that appellee was injured as alleged and as a result, sustained total and permanent incapacity to labor. The jury further found, in answer to special issue No. 26A, that a prior injury received by appellee in an automobile accident on January 10, 1951 had not contributed to the incapacity which they found he had suffered.

Appellant contends in its first point that the evidence conclusively shows appellee injured his right leg in the 1951 automobile accident, and shows without dispute that such prior injury to appellee's leg contributed to the incapacity following the accident which is the basis for this suit; that the jury finding in answer to special issue 26A to the effect that appellee's prior injury has not contributed to his disability is

unsupported by and "so clearly contrary to the overwhelming weight of the evidence as to indicate that the jury was biased or prejudiced against appellant."

In our opinion, the point is not well taken. There is evidence indicating that the prior injury to appellant's leg in the car wreck contributes to his present disability. There is also evidence, however, that after appellee's automobile accident he recovered from the results of the injury suffered thereby insofar as his ability to work was concerned and suffers and has suffered no disability on account of such injury since he went back to work the latter part of 1951. Appellee testified that in the latter part of 1951, which was several months after the automobile accident, he secured employment with a drilling company working on derricks; that he worked on that job about a month and a half and was able to do all that was required of him. He testified that he then worked for other oil field companies for about six or eight months after which he went to the state of Indiana and there worked first in a filling station and then for International Harvester Company. He testified that from the time he went back to work after the car collision and prior to the time of the injury for which he claims compensation he lost no time by reason of physical disability; that during such period he had no trouble of any kind with his right leg which had been injured in the car wreck; that he had physical examinations for four different jobs and received employment after each examination. He testified that since the injury involved in this suit he has had to be in bed a lot and has used crutches most of the tme; that he has pain in his back and in his hip and right side; that the pain and soreness extends above his belt line and that he did not have these pains prior to the injury complained of; that the only kind of work he has done since his last injury was with a tourist camp where the work was light and his wife helped him with that; that he cannot do any kind of heavy work; that when he received the injury complained of he weighed about 185

pounds and at the time of the trial weighed only 140 to 145 pounds. Appellee's wife testified that she married him prior to the time he started to work for International Harvester and that from that time until the time of his injury he worked regularly and lost no time on account of any disability except two or three days on one occasion when he hurt his toe; that he had no limp or other indication that there was anything wrong with his right leg. She also testified that after the injury complained of he had difficulty doing the work at the tourist camp and had to take several rest periods during the day.

The witness E. B. Pierce testified that he knew when Sevier returned to work in the oil fields in 1951 after the car wreck, and worked on the same job with him; that Sevier worked as many hours and did as much work as any of the other men on the job; that he carried his part of the load; that he had the appearance of being an able-bodied, healthy man and he saw nothing about his leg that interfered with his work in any manner.

The answer to special issue No. 26 A to the effect that the injury sustained by appellee in the 1951 car wreck did not contribute to appellee's incapacity is not unsupported by, and contrary to the overwhelming weight of the evidence. The issue is amply supported by the evidence in this case. The points complaining of these matters are overruled.

Special issue No. 16 inquired whether Sevier's injury was not confined solely to his right leg. In this connection, the charge of the court contained the following instruction:

"* * * the term 'leg' wherever it appears in this charge shall have the following meaning: 'All of the bones of the leg and all of the muscles, tendons, ligaments, nerves and cartilage incident to and necessary to the use of the leg at or above the knee to the hip joint, but not including the hip joint. You are instructed that in answering

this issue that all injuries to the leg at or above the knee are designated as injuries to the leg.'"

Appellant objected to the above definition because of the language to the effect that the leg did not include the hip joint. It is urged that the definition is too restrictive and amounted to a comment on the weight of the evidence; that it is contrary to the provisions of Article 8306, § 12 of Vernon's Revised Texas Civil Statutes because by the terms of such statute any part of the leg above the knee is a part of the leg; that the leg includes all of the thigh bone or femur which fits into and is a part of the hip joint, and that it is, therefore, incorrect to say that the hip joint is not a part of the leg.

■ The statute in question provides compensation for the "loss of a leg at or above the knee." This portion of the leg is generally referred to as the thigh. The thigh bone or femur extends from the knee to the trunk to which it is joined. Webster's International Dictionary; 41 Words & Phrases, Thigh, p. 556. An injury confined to the femur is also confined to the leg. In our opinion, however, injuries to the joint connecting the femur or the thigh to the trunk, that is the hip joint, were not intended to be included in injuries to the leg as contemplated by the statute. The femur extends to and into the hip but it stops at the joint. It does not include the joint and the court did not err in so instructing the jury.

Counsel for plaintiff, in his opening argument to the jury, stated as follows: "They sent him down to Dr. Johnson—no, Jones, down here at Snyder; and, did they have Dr. Jones' deposition here?" Defendant's counsel immediately objected to this argument on the ground that there was no evidence that Dr. Jones was any more available to the defendant than to the plaintiff. The court, in ruling upon the objection simply stated that the jury had heard the evidence.

Plaintiff's counsel then stated to the jury, "Well, anyway, the compensation folks had

Dr. Johnson—Jones—to examine him two or three times." Counsel for defendant then objected on the ground that there was no evidence that the defendant had anything to do with any examinations made by Dr. Jones and that the only testimony in this regard was to the effect that appellee's wife took him to Dr. Jones. The court, in ruling upon the matter, stated, "That is right, but the jury heard the evidence." Plaintiff's counsel then stated to the jury: "Well, but to say the least, Dr. Jones is not here; and we will go on. May be glad of it."

■ In appellant's point No. 3 it is complained that the court erred in overruling its objections to the above argument. No evidence or inference indicates that Dr. Jones was under the control of or in any way connected with appellant. The argument of counsel for appellee, in effect, criticising appellant for not producing Dr. Jones as a witness was improper. Stewart v. Shoemake, Tex.Civ.App., 225 S.W.2d 873. The argument was particularly improper because counsel also argued that appellant had Dr. Jones to examine appellee two or three times, which was wholly without support in the record. Under the circumstances of this case, however, we feel that no injury resulted to appellant and that the error is therefore not reversible. Appellant's counsel objected to the argument and pointed out to the court in the presence of the jury that there was no evidence that appellant had anything to do with the examination made by Dr. Jones, but that the evidence showed appellee's wife carried him to Dr. Jones. The objection should have been sustained, but the court did, in passing upon the objection, in the presence of the jury state, in effect, that appellant was correct in his contention as to the facts and further stated that the jury had heard the evidence. Appellee's attorney then commented that he would go ahead with the argument and "may be glad of it." It appears to us that counsel for appellee came out second best in this exchange. The court, in the presence of the jury, agreed with appellant's statement that counsel for appellee was mistaken in say-

ing that appellant had anything to do with Dr. Jones' examination. Appellee's counsel, in effect, then indicated that it might be just as well for him that the doctor was not there. There is no such injury to appellant as to require a reversal of the case. We cannot say that the argument, under the circumstances, was calculated to cause and probably did cause the rendition of an improper judgment. Turner v. Gossett, Tex.Civ.App., 267 S.W.2d 877; Missouri Pac. Ry. Co. v. White, 80 Tex. 202, 15 S.W. 808, 811.

█ In points Nos. 4 to 9 inclusive, appellant urges that other argument by appellee's counsel is reversible error. The rule as to when a judgment will be reversed because of improper argument is stated as follows by our Supreme Court in an opinion by Judge Calvert in the case of Aultman v. Dallas Railway and Terminal Co., 260 S.W.2d 596, 599:

"* * * the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment * * *."

Measured by the above rule it is our opinion that none of the arguments complained of constitute reversible error. Appellee's attorney, in his opening argument after discussing the medical treatment and examination of appellee in connection with his injury in the 1951 automobile accident stated:

"* * * and they carried him back not many days ago to another doctor over in Oklahoma City. Hunting. Yes, hunting for some little something to protect themselves with against the man that is in the shape that this man is in today"

█ There is no testimony that appellant sent appellee to see a doctor in Oklahoma City. The only evidence in this respect indicates that appellee some time after the 1951 car accident went to see and was treated by Dr. Howard Bruce Shorbe in Oklahoma City. Appellant secured and introduced in evidence Dr. Shorbe's deposition. This is obviously what counsel was talking about when he said: "They carried him back not many days ago to another doctor in Oklahoma City." This argument was not objected to and, in our opinion, is not such a prejudicial misstatement of the evidence as to require a reversal of the judgment.

Appellant's fifth point complains of another argument to the jury by appellee's counsel which has no basis in the record, and to which objection was made. The argument was as follows:

"Now, this continues about * * * let me see down here, quite a number, and I will not go over all of them; but the same question to be answered, and they are simple and easy, and arranged so that, as truly, in that that after * * * asking if he got any pay or if anything put out * * * did he have any compensation with this car-collision down here about Midland. He carried no compensation, none of the hands with him carried any compensation; but, they put in here, do you know * * *."

█ No issues were submitted nor was there any evidence concerning the compensability of the injury sustained by appellee in the 1951 car wreck. There was an issue inquiring whether the prior injury contributed to the disability for which appellee seeks compensation. If a prior injury contributes to a disability which follows a second injury, recovery is reduced by the amount of the contribution regardless of whether or not the prior injury was compensable. Miears v. Industrial Accident Board, 149 Tex. 270, 232 S.W.2d 671. If the prior injury does not contribute to the disability the compensability of the prior injury is likewise immaterial to the right and degree of the recovery by the claimant. Where an argument, unsupported by the evidence, concerns immaterial matter not of itself prejudicial, no reversible error is shown. Hamill & Smith v. Parr, Tex.Civ.

App., 173 S.W.2d 725. The point is overruled.

Appellee's counsel, in his closing argument, stated as follows:

"Let's look at some more of their tactics. You heard Mr. Smith complain longly and loudly about this man going to a man and not be willing to go into the hospital and take treatment. What money did he have to take treatment with? Here is a working man, a wife and a family; and, he gets hurt, and he goes to a doctor, and the doctor tells him he has got to go to a hospital and take a lot of expensive hospital treatment. And, how could he pay for it? And did Texas Employers' Insurance Association come in and say 'we will treat you'? Not one dime of their money, oh, no. They want to sit back with their money in their pocket and say 'oh, no, you didn't get hurt.'"

 The above argument was objected to on the ground that no evidence showed that appellant refused to treat appellee. The record is silent on the question of whether appellant insurance company furnished, offered or refused to furnish medical treatment for appellee. The question, however, was and is immaterial because appellee did not seek recovery for medical expenses and such expense was not an issue in the case. The argument complained of was in answer to argument of counsel for appellant commenting on the fact that Sevier had not followed the doctor's instructions and had left the hospital against his doctor's advice. The point is overruled.

Appellant complains, in its sixth point, of the following argument by appellee's counsel:

"Now, men, from the condition of my throat I can hardly make a speech of any kind; but I have done the best I could in handling this case, and I hope you fellows will help the injured man."

 No objection was made to this argument. We cannot say that the argument was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

In his closing argument to the jury, appellee's counsel stated as follows:

"They come in here, and they say to you, first, we don't owe him anything and haven't paid him anything because he got hurt some time before, so therefore we won't give him anything. Now, if you won't buy that, Gentlemen, if you won't go for that * * * if the fact that man got out and worked for a period of months at that same type of hard work before he got hurt on this job, if that changes your way of looking at things and you can't reasonably close your eyes to it, like we want you to close your eyes to it, then Gentlemen let's just say it is only in the leg, let's just say it is only in the leg. But, if you don't buy that 'only in the leg' business we have still got a place where we can get out of paying the man * * * let's say his disability is only * * *."

 Appellant urges that the above argument informs the jury of the effect of its answers. Generally it is reversible error for an attorney to inform a jury of the legal effect of the answers. Of course, argument always discloses that one party desires and considers it to his advantage for the issues to be answered in one manner and that the opposing party desires a different answer. This, of course, is of necessity permissible. Often the issues themselves disclose to an intelligent person the answers which are favorable to the respective parties. Ordinarily, to simply disclose to the jury the result of their answers in such a case is harmless error. The argument complained of told the jury nothing which they, as intelligent men, did not already know. We cannot see how appellant suffered any injury by the argument. Arando v. Higgins, Tex.Civ.App., 220 S.W.2d 291 (Ref. N.R.E.); Southwestern Telegraph & Telephone Co. v. Sheppard, Tex. Civ.App., 189 S.W. 799 (Err. Ref.).

We also overrule appellant's contention that the cumulative effect of all the argument complained of was such as to constitute reversible error. We find no error requiring reversal. The judgment of the trial court is affirmed.