17320

WALTER P. ROPER, Employee-Respondent, v. KIMBRELL'S OF
GREENVILLE, INC., Employer, and Employers' Mutual Casualty
Co., Carrier, Appellants

(99 S. E. (2d) 52)

454

[redacted]

*Messrs. Haynsworth, Perry, Bryant, Marion & John-stone,* of Greenville, *for Appellants,*

*Benj. A. Bolt, Esq.,* of Greenville, *for Respondent,*

July 3, 1957.

LEGGE, Justice.

In the course of his employment as manager of Kimbrell's of Greenville, Inc., a furniture store, respondent sustained fractures of the right 7th, 8th, 9th and 10th ribs and a separation of the joint between the left collar-bone and shoulder blade. Upon the hearing of his claim under the Workmen's Compensation Law the hearing commissioner awarded compensation for a forty (40%) per cent loss of use of the left arm and a fifteen (15%) per cent loss of use of the right

arm. This award was affirmed by the full commission, and thereafter by the resident judge of the thirteenth circuit, from whose order the employer and the insurance carrier appeal, charging that the award is not supported by the evidence, and that if respondent sustained partial disability it was general, and not specific, in nature.

Section 72-152 of the 1952 Code, relating to partial general disability, provides that "except as otherwise provided in § 72-153, when the incapacity for work resulting from the injury is partial, the employer shall pay * * * to the injured employee during such disability a weekly compensation equal to sixty per cent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than thirty-five dollars a week", the period to be covered by such compensation not to exceed in any case three hundred weeks from the date of injury.

Section 72-153, which sets out a schedule of compensation for loss of specific members, provides in item (13) that the weekly compensation to be paid for the loss of an arm shall be sixty per cent of the injured employee's average weekly wages, but not less than $5.00 nor more than $35.00, during two hundred weeks. It further provides that total loss of use of a member or loss of vision of an eye shall be considered as equivalent to the loss of such member or eye, and that the compensation for partial loss of or for partial loss of use of a member or for partial loss of vision of an eye shall be "such proportion of the payments above provided for total loss as such partial loss bears to total loss".

Whether or not respondent sustained, as the result of the accident, a forty (40%) per cent loss of use of the left arm and a fifteen (15%) per cent loss of use of the right arm, was an issue of fact; and the Commission's determination of that issue is conclusive unless it was without evidentiary support. That the Commission made its award under 72-153 rather than under 72-152 is a matter with which we have no concern. Our inquiry is limited to a

single issue, *viz.*: Was there any competent evidence to support the finding of specific disability above referred to?

Appellants contend that the finding of partial disability of each arm cannot be permitted to stand because there is no evidence of an injury directly to the arms. We are unable to agree with this contention. Section 72-153 contains no such requirement either expressly or by reasonable implication. "Loss of use" and "partial loss of use" are simple, everyday, unambiguous words, and are to be given their ordinary, generally accepted meaning. *McCollum v. Snipes,* 213 S. C. 254, 49 S. E. (2d) 12; *Field v. Gregory,* 230 S. C. 39, 94 S. E. (2d) 15. Nothing in Section 72-153 or elsewhere in the statute relating to workmen's compensation suggests restriction of their meaning to such total or partial loss of use as has resulted from a direct injury to the member itself.

*In re Burns,* 218 Mass. 8, 105 N. E. 601, 603, is in point. It involved the applicability of the scheduled compensation for loss or incapacity of specific members to a situation in which loss of use of the employee's legs had resulted from a fracture of the spine, with severance of the spinal cord. To quote from the opinion:

"Compensation also has been allowed * * * for the permanent incapacity of both legs. The insurer contends that this was erroneous, because there was no actual injury to the feet or legs themselves, but only to the spine and spinal cord; the paralysis of the lower limbs being due to that injury alone. This presents a very interesting and somewhat close question, which we do not find to have been passed upon by any court. But it is enacted by R. L. c. 8, § 4, cl. 3 that 'words and phrases shall be construed according to the common and approved usages of the language' with a provision for technical words and legal terms which is not now material. In common speech the word 'injury,' as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability.

If one by external violence had his optic nerve severed close to the brain, or its function destroyed so as to result in blindness, although nothing whatever had been done to the eyes themselves or to the structures immediately surrounding them, it yet would be said in common speech that his eyes had been injured to the point of uselessness. Whatever part of the human body thus has been made incapable of its normal use so that practically it has ceased to be available for the purpose for which it was adapted, is certainly injured according to the common understanding of men".

In the case at bar appellants cite *Bumpus v. Massman Construction Co., Mo. App., St. Louis*, 1940, 145 S. W. (2d) 458, 460, in support of their argument that respondent's disability should be classified as general and not as specific. But while that case resembles this factually, the issue there involved was the adequacy of the award rather than its propriety *per se*. There the injury was directly to the employee's left shoulder, and the award which was "based upon a finding of 40% permanent partial disability of the left or minor arm at the shoulder", was, under the Missouri statute, payable weekly for a maximum period of 212 weeks. That statute, following enumeration of compensable specific losses, went on to provide that, for permanent injuries other than those specified, compensation should be payable for a maximum period of 400 weeks. The employee appealed, contending that his disability should not have been measured solely in terms of the proportionate loss of use of his left arm, and that the basic figure of 400 weeks, rather than 212, should have been taken upon the theory that the injury involved the shoulder and other portions of his body and not merely the arm. Said the court:

"Had the injury, with its resultant disability, been to Bumpus' arm, then the commission, in its discretion, would have been required to ascertain the proportionate relation which the particular injury would have borne to the loss of use of the arm, and compensation would have been properly awarded in accordance with the method of calculation adopted by the commission in computing the award. * * *

"All the evidence shows, however, that the injury was not to the arm, but to the shoulder, so that in view of this circumstance, it was not proper to base the award upon the theory of nothing more than the proportionate loss of the use of the arm. To be sure, the functional disability of the arm may have comprised a substantial portion of the whole amount of disability suffered, but to have limited the compensation to that particular character of disability necessarily required that the commission take no account of the injury to the shoulder, whatever the precise nature of such injury may have been, in so far as the injury to the shoulder affected Bumpus' functions with respect to the use of portions of his body other than his arm."

In the case at bar the employee is not contending for compensation additional to that for partial loss of use of arms under the scheduled provisions of Section 72-153.

So also in *Bray v. Carrothers Construction Co.*, 1930, 131 Kan. 766, 293 P. 504, 506, which appellants cite, where as the result of a fracture of the right shoulder blade, award was made only for scheduled partial disability of the right arm despite the finding that there were also shoulder injuries causing pain on effort to perform manual labor, the employee's appeal was sustained, the court holding that the shoulder injuries constituted "an additional disability for which as a matter of law either an additional award should have been made, or an award for such disability as would entirely dispense with the award for the scheduled disability."

For like reason, *Gilbert v. Metropolitan Utilities District of Omaha*, 1953, 156 Neb. 750, 57 N. W. (2d) 770, and *Tibbals Flooring Co. v. Brewster*, 1954, 196 Tenn. 684, 270 S. W. (2d) 323, are not in point. In the former, where the employee had sustained a lumbosacral disc herniation, the court rejected the employer's contention that compensation should be limited to resultant specific loss of use of the left leg, and affirmed an award for permanent partial disability. In the latter, where a laborer, qualified only for manual work, lost the use of an arm, an award for total permanent disa-

bility was affirmed over the employer's contention that it should have been limited to the scheduled compensation for injury to the specific member.

■ While much of the medical testimony in the instant case refers to disablement of the shoulders rather than the arms, resultant partial loss of use of the arms is evident throughout the record.

Dr. Larry H. McCalla, the only medical witness offered by the respondent, testified that upon objective findings he would rate the disability at five per cent to the right shoulder and ten per cent to the left shoulder, or like disability to the right and left arm respectively, and that the main disability lay in respondent's inability to raise his arms above his head. In the course of his cross-examination he testified, from a letter that he had written to respondent's counsel and the employer under date July 27, 1954:

"A. Despite the positive objective findings he has considerable pain in both shoulders and right chest. He has appreciable loss of strength especially in the left arm and shoulder. He tires very easily. Pain varies and changes with the weather.

"Q. All right, sir, now go ahead. A. From what Mr. Roper tells me about his ability to do his work I would estimate his subjective disability at fifteen per cent to the right shoulder and forty per cent to the left".

In connection with the testimony just quoted, it is to be observed that just before it was given Dr. McCalla had, as before stated, testified that based on objective findings he would rate the disability "at five per cent to the right shoulder and ten per cent to the left shoulder"; and thereupon, in response to the Commissioner's remark: "That would have to be based on the arm because there's no shoulder in the specific schedule", had replied: "That would be satisfactory". By the same token, his testimony as to "subjective disability" of fifteen per cent to the right shoulder and forty per cent to the left may be fairly understood as applicable also to the arms.

. Respondent testified that his arms are very painful from time to time; that he is no longer able to lift and move furniture as he was accustomed to do in the performance of his work as manager; that in taking inventory his arms get very tired and he becomes exhausted; and that his arms are especially painful in changeable weather. His testimony as to disability related, percentage-wise, to general, not specific disability, as follows:

"Q. Would you mind giving the Commissioner your judgment as to how much difference there is in your ability, your physical strength to do what you did before as compared to what it is now? A. Well, lots of my work I have to pass on down to somebody else that is my duty, my job; I would say thirty to thirty-five per cent.

"Q. You feel that what your ability was to earn wages in 1953 compared to now is one-third to thirty-five per cent less? A. Yes, sir."

Mr. P. B. Kleckley, assistant manager of Kimbrell's of Greenville, Inc., testified that Mr. Roper has been unable, since his injury, to move furniture around or take a mirror or a picture down from the wall; and that having to call another employee to do this sort of thing handicaps his efficiency. When asked to compare Mr. Roper's present ability to perform his duties as sales manager with that prior to his injury, he replied that from 25 to maybe 35 per cent of the things that he formerly did he is no longer able to do.

The only other witness was Dr. L. C. Meyer, who was offered by the appellants. Dr. Meyer, an orthopedic surgeon, first saw Mr. Roper on December 4, 1953, some four and a half months after the accident, thereafter occasionally while he was in the hospital as Dr. Calla's patient, and finally on December 1, 1954. He concluded on the last mentioned date that the right shoulder was entirely normal and that the left shoulder presented a little restriction, which the witness thought was probably more voluntary than real. He testified that in his opinion, based upon objective findings, Mr. Roper could do his normal work as manager in a normal manner,

although he would be somewhat restricted in lifting a very heavy weight high; and that, based upon Mr. Roper's complaints, he would estimate that he had about a five per cent general disability.

It is well settled that award may be made, under Section 72-153, for loss, or loss of use, of a specific member, though there be no showing that the injured employee has suffered loss of earnings or of earning capacity. *Ripley v. Anderson Cotton Mills,* 209 S. C. 401, 40 S. E. (2d) 508; *Hoke v. Cherokee County,* 216 S. C. 376, 58 S. E. (2d) 330. Award under Section 72-152, for total or partial general disability, is predicated upon loss of earnings or of earning capacity. *Keeter v. Clifton Manufacturing Co.,* 225 S. C. 389, 82 S. E. (2d) 520. Award under 72-153 rather than 72-152 is within the power of the Commission if there be evidence to support it. While the award must be based upon evidence and not upon surmise, speculation or conjecture, *Parrott v. Barfield Used Parts,* 206 S. C. 381, 34 S. E. (2d) 802, it is not necessary that the percentage of disability or loss of use be shown with mathematical exactness, *Dickey v. Springs Cotton Mills,* 209 S. C. 204, 39 S. E. (2d) 501; *Ripley v. Anderson Cotton Mills, supra.*

As to the extent to which respondent's arms have been disabled as the result of his injury, it is not for this court to balance objective against subjective findings of medical witnesses, or to weigh the testimony of one witness against that of another. That is the function of the Commission alone. Upon consideration of the evidence as hereinbefore set out we cannot say that there was none to support the findings of the Commission.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.