The AETNA CASUALTY AND SURETY
COMPANY, Petitioner,

v.

Raymond MOORE, Respondent.

No. A–8731.

Supreme Court of Texas.

July 25, 1962.

Rehearing Denied Oct. 10, 1962.

Bailey & Williams, Dallas, for petitioner.

Yarborough, Yarborough & Johnson, Dallas, for respondent.

STEAKLEY, Justice.

This is a Workmen's Compensation case in which Respondent (plaintiff below) alleged a general injury to his right shoulder, neck, and back, together with shock and injury to his entire body, nerves, and nervous system. Petitioner alleged by trial amendment "that any disability or incapacity to the plaintiff resulting from the injury in question was limited to the right arm and therefore was a specific injury to the right arm." The case was submitted to the jury as a general injury over the objection of Petitioner that the charge of the court did not "include a submission to the jury of the question of whether or not the disability or incapacity involved was at any period of time limited to the use of the arm * * * and the defendant specifically requests that the requested special issue in separate form and in writing this date be added to the charge submitted to the court." The requested special issue referred to was No. 2 of an originally requested series of nine and read as follows: "Do you find from a preponderance of the evidence that such disability, if any you have found in answer to the preceding special issue, was limited to the use of the right arm?"

Judgment upon the jury verdict was for total permanent disability; this was affirmed by the Court of Civil Appeals which held that the requested issue was not proper

since Respondent's injury was to his shoulder and a shoulder injury is not enumerated in Article 8306, Section 12, Vernon's Annotated Texas Statutes. 350 S.W.2d 898.

Respondent is a painter and was injured in falling from a ladder; he described the actual blow as being to his shoulder and back. Dr. Richard B. Herrick, the expert medical witness offered by Petitioner, described the place of injury as "a slight evulsion or a small chip fracture of bone on the interior surface of the glenoid socket of the shoulder." He also described a marked swelling of the entire shoulder on the occasion of an examination of Respondent; however, it was· the expert opinion of this witness that the· shoulder injury would. affect the use of his right arm only, his statement being that "I thought he probably would have fifteen per cent permanent partial disability of his arm" which would not "be inclined to affect any other part of his body."

On the other hand, Dr. M. A. Schalck, the expert medical witness offered by the Respondent, testified that he found that Respondent also had trouble in the lumbosacral joint, and testified in some detail concerning this trouble; it was his opinion that Respondent had suffered an injury in the lower part of his back.

The conflicting testimony of the medical witnesses presented a fact question, on which we express no opinion, i. e., whether Respondent's disability was general or was limited to the use of his right arm. However, it is clear from the testimony of both medical witnesses, and from Respondent himself, that the injury itself (as distinguished from the question of disability) was not confined to Respondent's right arm. See Texas Employers' Insurance Assn. v. Sevier, Tex.Civ.App., 279 S.W.2d 473, writ ref. n. r. e. Indeed, Petitioner did not allege an injury to Respondent's right arm. Its point of error here is that it was entitled to the defensive issue quoted above—phrased in terms of disability as distinguished from injury—because the controlling question is not where the injury occurred but whether disability from the injury is confined to the use of a specific member.

We· thus have the problem of whether the Workmen's· Compensation Act limits recovery to a specific injury when the injury itself is not to a specific member enumerated in Section 12 of Article 8306, but where the disability resulting therefrom is limited to the use of an enumerated specific member. We point out that if not, and as· acknowledged by counsel for Respondent in oral argument, the injured employee will be subject to a take nothing judgment if he is unable to establish a loss of earning capacity, notwithstanding the fact that he has suffered a disability in the loss of use of a specific member.

Petitioner relies principally on the case of Coleman v. Hartford Accident and Indemnity Co., Tex.Civ.App., 297 S.W.2d 236, wr. ref. This case involved a specific injury to the arm (although not shown by the ·opinion in the case, the record discloses that the injury resulted from severe\ burns to the arm between the wrist and shoulder), and the holding of the case is that "if the evidence shows that the other portions of the claimant's body were not impaired except as affected by the injury to or loss of use of the particular member, there would be * * * no recovery allowed for the impairment of any other portions of claimant's body." Petitioner urges the extension of this holding to the situation in the instant case where the actual injury is not to a specific member.

Respondent, on the other hand, cites the opinions of the Courts of Civil Appeals, later noticed, and draws the issue in this manner: "In order for compensation to be confined to a specific member there are two necessary elements: (1) The first is that the injury must be confined to the specific member, and (2) that some incapacity to the specific member must result. * * * But for emphasis, we again repeat that *to confine an injured workman*

*to specific compensation, the 'injury' as well as the incapacity must both be confined to the specific member."*

Under Respondent's view, we would not reach the question of disability limited to the use of Respondent's arm and whether Petitioner was entitled to the requested Special Issue No. 2, since the actual injury was not confined to Respondent's right arm.

The pertinent portions of Section 12 of Article 8306, read as follows:

> "Sec. 12. For the injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent (60%) of the average weekly wages of such employee, but not less than Nine Dollars ($9) per week nor exceeding Thirty-five Dollars ($35) per week, for the respective periods stated herein, to wit:
>
> \* \* \* \* \* \*
>
> "For the loss of an arm at or above the elbow, sixty per cent (60%) of the average weekly wage during two hundred (200) weeks.
>
> \* \* \* \* \* \*
>
> "In all cases of permanent partial incapacity it shall be considered that the permanent loss of the use of the member is equivalent to, and shall draw the same compensation as, the loss of that member; but the compensation in and by said schedule provided shall be in lieu of all other compensation in such cases."

This Court said in National Mutual Casualty Co. v. Lowery, 136 Tex. 188, 148 S.W. 2d 1089, 1090, that "A reading of Article 8306 of our Workmen's Compensation Laws will disclose that it divides compensable injuries into two main classes: (a) General injuries, and (b) specific injuries. As we interpret the pertinent provisions of Article 8306, all compensable injuries must be compensated as general injuries unless such statutes specially classify same as the subject of specific compensation. It follows that in the case at bar, Lowery must be compensated as for a general injury unless we can find some statutory authority to compensate him for a specific injury."

Although the question has not been directly presented as here, the Courts of Civil Appeals appear to have considered that actual injury to a specific member is prerequisite to specific injury compensation. For example, in Texas Employers' Insurance Assn. v. Chitwood, Tex.Civ.App., 199 S.W.2d 806, no writ history, the court said:

> "This contention is that the maximum it was liable for in any event was 200 weeks instead of 300 weeks allowed by the judgment. This contention is based on the theory that the effect of the injury was partial and permanent incapacity of one leg. Plaintiff's pleading covered a general injury as well as specific injury to the leg. From the fact that compensation was for 300 weeks and the court never found specific injury, it is to be inferred that the trial court found a general injury rather than a specific partial injury to the leg. The injury to plaintiff was to the joint. There was a rather severe injury to the hip joint. *If plaintiff suffered loss of use of his leg in any degree it is not the result of direct injury to his leg but the result of the injury to his hip joint."* (Our emphasis.)

See also Millers' Indemnity Underwriters v. Cahal, Tex.Civ.App., 257 S.W. 957, and Maryland Casualty Co. v. Jones, Tex.Civ. App., 73 S.W.2d 668, each with no writ history.

The prevailing view of the courts of other states is to the contrary. The Supreme Court of South Carolina in Roper v. Kimbrell of Greenville, 231 S.C. 453, 99 S. E.2d 52, considered an appeal by the insurance carrier asserting an opposite position from that of Petitioner here, i. e., that a

specific injury award was error because "the finding of partial disability of each arm cannot be permitted to stand because there is no evidence of an injury directly to the arms." The injuries consisted of rib fractures and a separation of the joint between the collar bone and the shoulder. The Court held that "loss of use" and "partial loss of use" in the South Carolina specific injury statute "are simple, everyday, unambiguous words, and are to be given their ordinary, generally accepted meaning. * * * Nothing in Section 72-153 or elsewhere in the statute relating to workmen's compensation suggests restriction of their meaning to such total or partial loss of use as has resulted from a direct injury to the member itself." The Court then pointed out that "It is well settled that award may be made, under Section 72-153, for loss, or loss of use, of a specific member, though there be no showing that the injured employee has suffered loss of earnings or of earning capacity." Thus the injured employee was entitled to a specific injury recovery without establishing loss of earning capacity resulting from disability to a specific member not itself directly injured.

The case of In re Burns, 218 Mass. 8, 105 N.E. 601, by the Supreme Judicial Court of Massachusetts, involved an award upon a specific injury basis of permanent incapacity of both legs resulting from an injury to the spine and spinal cord causing paralysis of the lower limbs. The insurer contended in this case as in Roper, supra, that the award was erroneous because there was no actual injury to the feet or the legs themselves. In denying this contention, the Court said:

"In common speech the word 'injury,' as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability. If one by external violence had his optic nerve severed close to the brain, or its function destroyed so as to result in blindness, although nothing whatever had been done to the eyes themselves or to the structures immediately surrounding them, it yet would be said in common speech that his eyes had been injured to the point of uselessness. Whatever part of the human body thus has been made incapable of its normal use so that practically it has ceased to be available for the purpose for which it was adapted, is certainly injured according to the common understanding of men."

Stanley v. United Iron Works Co., 160 Kan. 243, 160 P.2d 708, by the Supreme Court of Kansas, considered a head injury resulting in impairment of sight in one eye and hearing in both ears for which the injured employee recovered specific injury compensation. The contentions of the appealing employer are stated by the Court as follows:

"Appellants further contend that unless an accident results in an injury directly to the affected member or organ there can be no recovery for scheduled injuries. Baldly stated their argument is that if an employee is struck on the head and is injured to the extent such injury results in partial loss of the use of a scheduled member, or if he suffers an injury to his spine which causes a permanent partial paralysis of some such member or organ, the only compensable scheduled injury is that place on the body, which comes in direct contact with the blow. We confess that to us, under findings such as we have in this case, the contention is a new and startling one. So new that we know of no case in this state where it had been urged. The fact that the learned counsel for appellants cite no decision to support it while the equally learned counsel for appellee fail to direct our attention to one refuting it indicates to us that there are none. So

startling in its significance and far reaching effect that, in view of the language of the applicable statute, we are inclined to wonder if this is the first time anyone has had the temerity to suggest it. Is it possible the Workmen's Compensation Act is so limited in its scope? We do not think so."

We are in agreement with the underlying reasoning of the foregoing cases that violence would be done to the spirit and intent of Workmen's Compensation Laws if the specific injury provisions are construed to limit such recovery to instances of direct injury to the specific member, principally in the fact that to hold otherwise would preclude recovery by an injured employee of compensation for a resulting injury to a specific member not directly involved in the accident when the injured employee is unable to establish a resulting loss of earning capacity. The view we are adopting would seem clearly to be more consistent with the purposes of our Workmen's Compensation Act in its provision for compensation to an injured employee for the loss, or the loss of use, of a specific member, regardless of the question of impairment to his earning capacity. See Traders & General Insurance Co. v. Maxwell, Tex.Civ.App., 142 S.W.2d 685, writ dismissed, in which it was said:

"The statute thus denominates the loss of such member, or the loss of its *use*, as partial incapacity. So, in providing compensation therefor the law conclusively presumes that in the loss or the loss of the use of such a member the workman has sustained partial incapacity, and for that reason it is held in cases of such specific injuries that it is not necessary to show that incapacity has in fact resulted therefrom."

We hold, then, that as a matter of substantive law, Petitioner was entitled to the submission of requested Special Issue No. 2. This, in turn, brings us to the question which is raised by Respondent by counterpoints, namely, whether, as a matter of procedure, Petitioner lost its right to the submission of the issue in the fact that it was requested in the form of one of a series of nine as a single request, rather than separately. We think not under the particular circumstances here.

Edwards et al. v. Gifford, 137 Tex. 559, 155 S.W.2d 786, established the tests of "intermingled in such a way as to be confusing" and "If one or more of the special issues requested en masse should not be given," in resolving the problem of compliance with the former statutes and with present Rule 277, Texas Rules of Civil Procedure. Implicit in these tests, as stated in the cited case, is protection of a trial judge against having "to search through the requested issues and submit those which are proper and refuse those which are improper"; also, we may add, there is the purpose of protecting a trial judge against the deliberate concealment of proper issues among many not so, with the burden on the trial judge to ferret out the proper issue to protect the case against reversal. We are in full agreement with the foregoing and would not hesitate to uphold these tests in the instant case were we of the opinion that they are determinative here.

It is true, as urged by Respondent, that requested Special Issue No. 1 duplicated Issue No. 1 as given by the court; it was, however, related to requested Issue No. 2, and was not an improper issue which should not have been given. Moreover, there was no intermingling of the requested issues designed to confuse, or which was confusing; rather, the requested issues were a series of which Issue No. 2 in question was an integral part. We are persuaded that the trial court was not misled or confused by the form of the request but refused the series because he did not agree with Petitioner's theory of the case and was of the view that the crucial Issue No. 2 requested by Petitioner was improper; this is the question we have resolved to the contrary in the forepart of this opinion.

The judgments of the District Court and of the Court of Civil Appeals are reversed and the cause is remanded.

SMITH and GRIFFIN, JJ., dissent.

## ON MOTION FOR REHEARING

Rehearing denied.

SMITH, Justice (dissenting).

The dissenting opinion heretofore delivered is withdrawn and the following substituted therefor.

I respectfully dissent. None of the evidence places the injury sustained by Raymond Moore in the category of a specific injury. The petition upon which plaintiff went to trial contained no allegations direct, alternatively or otherwise, which could possibly afford the basis for a recovery due to a specific injury to the arm. The Legislature has divided compensable injuries into two main classes: general and specific. The injuries described in Moore's petition clearly fall in the class of general injuries. If the rule of the majority is followed, every injured person in the future, no matter if the facts confine his cause of action to a general injury, will be compelled to run the risk of losing his right to a recovery for total and permanent disability as a result of such injury solely on the defense that the disability was limited to a specific member.

The insurer in this case did not plead a specific injury as a defense until it filed a Trial Amendment. Neither did it plead that the injury to the arm was the sole cause of incapacity. In its pleading, it was alleged: " * * * [T]hat any disability or incapacity to the plaintiff resulting from the accidental injury in question was limited to the right arm * * *." This allegation has no support in the evidence unless the words "arm" and "shoulder" are synonymous. Of course, they are not. They are two different and separate parts of the body. If the Court's opinion is followed, then a workman who sustains a general injury to his shoulder could be limited to a recovery for a specific injury to the arm.

Moore, the injured workman, under the facts in this case, could not have pleaded or proved a specific injury alone. Of course, a plaintiff may plead and prove that a specific injury extended to other parts of the body and, thus, become a general injury, but this is the first instance where a claimant could be deprived of a recovery for a general injury merely on a possible fact finding that the disability suffered was limited to a specific member of the body.

An examination of Section 12, of Article 8306, will reveal that an injury, such as testified to by the insurer's own doctor, as well as Moore's doctor, which is the basis of this suit, is not classified as a specific injury. In fact, the insurer does not classify the injury as a specific injury to the arm, except in the sense that it wants the trier of the facts to find that disability, if any, was limited to the use of the right arm. I agree with Moore *that to confine an injured workman to specific compensation, the injury as well as the incapacity must both be confined to the specific member.*

The very first issue in a Workmen's Compensation case either assumes an injury, if the facts are undisputed, or inquires whether or not the plaintiff sustained an accidental injury in the course of his employment. In this case, the plaintiff pleaded a general injury and the first issue submitted to the jury was: "Do you find * * * that [the] accidental injury sustained by Raymond Moore on March 23, 1959 * * *." This issue assumed injury because the undisputed facts showed a general injury. In reality, the insurer's position in this case can be narrowed to the contention that Moore received *incapacity* to a *specific member as the end result of a general injury.* This is not the law, and never has been. Where a claimant sustained only a general injury,

such an injury cannot be reduced to a specific injury merely because of a jury finding that the disability suffered was limited to the use of a specific member. In the absence of pleadings and proof of an injury to a specific member, and where all the evidence shows only a general injury, the defense embodied in a requested issue to the effect that the claimant's incapacity was limited to the loss of use of the specific member can never be available. This is true in the present case simply because all of the pleadings and evidence conclusively show that Moore had sustained a *general injury,* as well as a *general incapacity,* which could have extended to the loss of use of his arm. Moore did not plead affirmatively that he had sustained an *injury* to his arm, but nevertheless, his pleadings and proof would permit him to recover for a general injury. If his arm was affected as a result of the general injury to the shoulder, the proof all the more abundantly supports the finding of the jury that he had sustained a general injury. In other words, if the shoulder was the only part of the body which was injured, then regardless of the results, it is a *general injury.*

The Court's opinion will compel the trial courts, in the future, to submit sole cause issues on every specific member that may become involved as a result of a general injury, whether such general injury be to the shoulder, the back, the head or the hip. Since the claimant did not affirmatively plead a specific injury to the arm, and since the defendant wholly failed to plead and prove a specific injury to the arm, and since there was no injury sustained to the arm, there was no basis for the defense that claimant's *incapacity was solely the result of incapacity to the arm.* All of the evidence in this case was to the effect that the injury was to the shoulder. Since there was no actual injury to the arm, the trial court properly refused to submit the requested issue. How can it be successfully argued that the amount of recovery allowed under Section 12, Article 8306, for the loss of use of the arm can be in any sense the sole

standard for measuring the compensation for the injury actually sustained, in this case, a general injury to the shoulder? Compensation is recoverable for the disability suffered by Moore from the injury to his shoulder including that occasioned to the use or function of his arm. See: Bumpus v. Massman Construction Co., Mo.App. (1940), 145 S.W.2d 458.

The holding by this Court is that although the injury concededly falls within the statutory definition of a general injury, nevertheless, it may be compensated for as a specific injury. This question must be decided in the light of the statutes and the evidence. Our statute defines injury as "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." See: Section 20, Article 8306. This definition of injury can only be construed to mean that it requires actual damage or harm to the portion of the body in question—here to the arm of the claimant. Despite this explicit statutory definition, the Court has chosen to follow cases from other jurisdictions where the term "injury" is not defined by statute.

Section 12 of Article 8306 speaks in terms of injuries and not in terms of disability. The section says: "For the *injuries* enumerated in the following schedule * * *." It does not say: "For the *disabilities* enumerated in the following schedule * * *." (emphasis added) This Court does not have the prerogative to rewrite the statute. This is especially true where to do so would limit the Claimant's recovery for a general injury to that allowed for an injury to a specific member. It is a fundamental principle in compensation cases that an *injury* must be established before the issue of *incapacity* or any other recovery under the Act is authorized. If the source of the claimant's incapacity grows out of a general injury to the body or the nerves thereof, which affects the extremities (here, the arm), then the source of his trouble is *general incapacity* and not *specific.*

In the case of Texas Employers' Insurance Association v. Brownlee, 152 Tex. 247, 256 S.W.2d 76, this Court said:

"In other words, if *the loss of the use of the hand* resulted *solely from the injury to the fingers,* the respondent would be limited in his recovery to that provision of the statute which provides for compensation in the event of the loss of, or the loss of the use of, the fingers." (emphasis added)

We held in Brownlee that the evidence showed indisputably that the *incapacity* to the right hand was due solely "to the injury to said specific members." We made it clear that the ultimate issue where a fact issue is raised is the issue of "sole cause," a matter which the requested issue here wholly fails to embody. There is nothing in this case which would authorize the submission of a "sole cause" issue. The claimant, Moore, is clearly entitled to his general injury recovery and should not be confined to a specific injury recovery since the origin of his trouble is from the general injury to his shoulder and not to his arm.

Even assuming that the Court has reached a proper result in the application of the law to this case, the requested issue was nonetheless properly refused. Rule 279 of the Texas Rules of Civil Procedure provides that the court "* * * shall submit the controlling issues made by the written pleadings and the *evidence* * * *." (See also Rule 277). Here, there is no evidence that will support the requested special issue that inquired: "Do you find from a preponderance of the evidence that such disability, if any you have found in answer to the preceding issue, *was limited to the use of the right arm?*"

True, Aetna's only medical expert, Dr. Richard B. Herrick, stated that he "* * * thought (Moore) would have 15% permanent partial disability of his arm" which would not "be inclined to affect any other part of his body." From this one statement the majority concludes that the shoulder injury would affect the use of his right arm only. However, the majority opinion completely disregards other direct testimony by Dr. Herrick.[1] He stated: "The patient *could not and would not move his shoulder in any direction * * * his symptoms were confined entirely to his right shoulder."* Without reservation, Dr. Herrick stated, "I

---

1. When *all* of the testimony of Aetna's witness, Dr. Herrick, is considered, it is impossible to conclude that there is any evidence to uphold the proposition, set out in the refused issue, that Moore's disability is *limited to his arm.*

Key to Testimony:
"* * * A. I have examined the shoulder once more and this time there was—this is a day or two afterwards, and by this time there was marked swelling of the entire shoulder and discoloration of the skin over an area three inches in length and one inch in width. *The patient could not* and would not *move his shoulder in any direction.*

"* * * A. At that time his symptoms were confined entirely to his right shoulder, and he was developing a satisfactory range of motion, although there was still some restriction of motion in the last fifteen degrees in all directions. Internal rotation was quite painful.

"* * * A. He continued to have pain in his right shoulder on certain motions.

"* * * Q. Now, Doctor, at the time you saw him last in 1959, with respect to his shoulder what was your evaluation or opinion as to his prognosis at that time?
"A. Well, the patient never returned to my office and so I was unable to estimate his progress and whether he had any permanent disability or not. *It was my feeling that the patient would probably have some temporary total disability to his shoulder.*
"* * * Q. Now, Doctor, with respect to his shoulder at the time you saw him in February of 1960, what was your evaluation of his condition and his prognosis?
"A. *I thought the patient had reached the point where he would have some permanent disability in his right shoulder.*
"Q. And *with respect to that disability,* Doctor, how would it affect him, in what parts of his body would it be—
"A. I thought it would have—well, it would affect his right arm, the use of his right arm."

thought the patient had reached the point where *he would have some permanent disability in his right shoulder.*" This testimony was never contradicted, and it was only after these statements that the doctor concluded that the injury and disability in the shoulder " * * * would affect the use of his right arm." When this testimony is considered with that relied on in the majority's opinion, it is impossible for me to agree that there is evidence supporting an issue to the effect that Moore's disability was *limited* to his arm. Certainly, there is evidence of disability to the arm, but there is absolutely no evidence that the disability suffered was "limited" to that member. The disability to the arm was only a consequence of the disability and injury in the shoulder.

The issue was properly refused; the opinion of the Court of Civil Appeals should be affirmed.

GRIFFIN, J., joins in this dissent.