633 S.E.2d 893

**Debra M. THERRELL, Petitioner,**

**v.**

**JERRY'S INC. d/b/a Jerry's Travel Center, Employer, and American Alternative Insurance Company, Carrier, Respondents.**

**No. 26196.**

Supreme Court of South Carolina.

Heard July 6, 2006.

Decided Aug. 7, 2006.

William P. Hatfield and Robert D. McKissick, both of Hyman Law Firm, of Florence, for Petitioner.

Paul Linwood Hendrix, of Jones and Hendrix, of Spartanburg, for Respondents.

Chief Justice TOAL:

In this case, the court of appeals affirmed the workers' compensation commission's decision to award recovery for a torn rotator cuff as a scheduled loss for the loss of an arm. We affirm, but modify the decision as outlined below.

### FACTUAL/PROCEDURAL BACKGROUND

Debra M. Therrell (Petitioner) tore her right rotator cuff when she fell while working as a waitress at Jerry's Travel Center.[1] Petitioner sought medical treatment for her injury, eventually undergoing arthroscopic surgery, and ultimately filed for workers' compensation benefits.

A single commissioner classified Petitioner's rotator cuff injury as an injury to Petitioner's "right upper extremity" and determined the injury resulted in a loss of twenty percent of Petitioner's use of her right arm. Accordingly, the commissioner awarded Petitioner a twenty percent recovery under S.C.Code Ann. § 42–9–30(13) (1976) (providing the scheduled recovery for the loss of an arm). Petitioner appealed to the full workers' compensation commission, arguing that an award under the scheduled loss of an arm provision was improper because her injury was to her shoulder, not her arm. The full

---

1. The rotator cuff is a group of muscles, ligaments, and cartilage attaching the humerus (armbone) to the chest. J. STANLEY MCQUADE, DETERMINING DISABILITY & PERSONAL INJURY DAMAGE, MEDICAL EVALUATIONS FOR TRIAL LAWYERS, 284–85 (1984). The shoulder socket consists of the clavicle (collarbone) and the scapula (shoulder blade). *Id.* Petitioner also injured her left knee in the fall. This case, however, does not involve the portion of the award designated for Petitioner's knee injury.

commission affirmed the single commissioner's decision, but increased Petitioner's disability rating to thirty percent.

On appeal, the circuit court focused on the deferential standard of review regarding factual and evidentiary matters in workers' compensation cases and affirmed the full commission's decision. The court emphasized that Petitioner presented the bulk of the evidence of her impairment in terms of the impact of the injury on her ability to use her arm. Similarly, the court of appeals affirmed the circuit court's decision; focusing on Petitioner's description of her injury as affecting her arm and on the fact that the medical evidence in the record rated Petitioner's injury as an impairment of the "right upper extremity." *Therrell v. Jerry's Inc.*, 360 S.C. 314, 318, 600 S.E.2d 127, 129 (Ct.App.2004).

This Court granted certiorari to review the court of appeals' decision, and Petitioner raises the following issue for review:

Under South Carolina workers' compensation law, is recovery for a torn rotator cuff limited to the scheduled recovery for the loss of an arm?

## Standard of Review

The Administrative Procedures Act governs appellate review of the workers' compensation commission's decision. Accordingly, this Court will not substitute its judgment for that of the commission as to the weight of the evidence on questions of fact. S.C.Code Ann. § 1–23–380(A)(6) (2005). Additionally, this Court may reverse or modify the commission's decision if Petitioner has suffered the appropriate degree of prejudice and the commission's decision is effected by an error of law or is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Id.*

## Law/Analysis

Petitioner argues that compensation for a torn rotator cuff should not be limited to the scheduled recovery for the loss of an arm. We agree.

S.C.Code Ann. § 42–9–30 (2005) sets forth what is commonly referred to as the "scheduled" scheme of workers' compensation recovery. Specifically, the statute details a formula for calculating compensation awards for several types of injuries.

Although the scheduled injury statute refers mostly to injuries resulting in the loss of particular members of the body, subsection 42–9–30(18) provides that a fraction of the award allowed for the loss of a member is recoverable for an injury resulting in the *loss of use* of a member.[2]

The instant case calls on this Court to interpret this loss of use provision. While Respondents allege the commission properly determined that Petitioner was limited to recovery for the scheduled loss of use of her arm, Petitioner alleges she should instead have received an award under § 42–9–30(20) for the loss of a member, organ, or part of the body not specifically listed in the compensation statutes or regulations. Thus, the question presented is most accurately restated as "whether compensation for a torn rotator cuff is limited to the scheduled recovery for the loss of use of an arm, or whether the injury is instead an unscheduled injury under § 42–9–30(20)." [3]

This is a novel issue for this Court. Petitioner's and Respondents' views of this issue essentially represent two competing approaches to scheduled recovery schemes. Under Respondents' approach, which we will call the "functional impairment" view, the functional impairment that results from an injury is dispositive for determining under what schedule

2. Sections 42–9–10 and –20 detail the alternative system of recovery, commonly referred to as "general disability." To seek a general disability award, a claimant who has suffered a scheduled injury must show that the injury affects some other part of his body and has resulted in a loss of earning capacity. *Singleton v. Young Lumber Co.*, 236 S.C. 454, 471, 114 S.E.2d 837, 845 (1960).

3. Notably, Respondents characterize the commission's decision as a "factual determination" that the Petitioner's upper extremity impairment applied to her right arm. Thus, Respondents urge this Court to apply the highly deferential standard of review due an administrative agency's determinations of that type. We disagree. The question of whether Petitioner sustained an injury would be a question of fact. In contrast, the question of under what subsection a rotator cuff injury is compensable is a question of statutory construction, which this Court reviews *de novo*. *See Gilliam v. Woodside Mills*, 319 S.C. 385, 387, 461 S.E.2d 818, 819 (1995) (deciding as a matter of law that a hip socket is not part of the leg for workers' compensation purposes); *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995) (holding that determining legislative intent is a question of law); *and* S.C.Code Ann. § 1–23–380(A)(6)(d) (2005).

an injury is paid. *See Langton v. Rocky Mountain Health Care Corp.,* 937 P.2d 883, 884 (Colo.Ct.App.1996). Applied to this case, Petitioner would be due compensation for any scheduled body part that is functionally impaired by her rotator cuff injury. Respondents contend that because Petitioner has only suffered the partial loss of use of her arm, she should recover only a scheduled award under § 42–9–30(13). Admittedly, this view is somewhat appealing because part of the goal of workers' compensation is to alleviate "the loss or impairment of an employee's capacity to earn." *Singleton,* 236 S.C. at 470, 114 S.E.2d at 845 (quoting *Burnette v. Startex Mills,* 195 S.C. 118, 121, 10 S.E.2d 164, 166 (1940)). Thus, it seems completely reasonable to award compensation for an injury based only on the "functional impairments" it causes.[4]

In contrast, the "situs of the injury" approach focuses on the injured body part in determining how the injury is properly compensated. Applied to this case, Petitioner argues that because her injury was to her shoulder and not her arm, a scheduled award for the loss of use of her arm is improper. This approach is most persuasively justified by the argument that in some cases, limiting recovery for some injuries to the member or body part that suffers the functional impairment does not adequately compensate for the actual injury which occurred.[5]

---

**4.** Interestingly, however, the full quote in *Singleton* implies that the scheduled recovery scheme is partially focused on compensating the claimant for his or her physical ailments, independent of any loss of functional ability. 236 S.C. at 470, 114 S.E.2d at 845 (stating that workers' compensation is designed to compensate for functional loss and "not to indemnify for any physical ailment or impairment as such, *except in the classes of case specifically provided in the Act.*") (emphasis added). Accordingly, this weighs slightly against applying the functional impairment view to South Carolina's scheduled recovery scheme.

**5.** Although Petitioner asserts that other jurisdictions "unanimously" adopt this view, Colorado stands with at least two other jurisdictions in limiting compensation for shoulder injuries to the schedule for the loss of use of an arm. *See Hagen v. Labor & Industry Review Comm'n,* 210 Wis.2d 12, 563 N.W.2d 454, 457–58 (1997) (finding Wisconsin's scheduled member statute ambiguous and deferring to the commission's "long-standing view" that a shoulder injury is measured as a loss of an arm at the shoulder); *and Castro v. Gillette Group, Inc.,* 239 Neb. 895, 479 N.W.2d 460, 463 (1992) (stating in a conclusory fashion that a shoulder injury whose only residual signs of damage was persistent

We hold that South Carolina's statutory scheme best complies with the situs of the injury approach, and contrasts sharply with Colorado's rigid functional limitation analysis. The Code provides that an injury to *any* unlisted member, organ, or part of the body may be compensated by determining the ratio that the resulting impairment bears to the "whole person." S.C.Code Ann. § 42–9–30(20) (2005). Far from enunciating a privileged list of scheduled injuries and focusing on the functional limitations caused by an injury, our scheduled recovery scheme specifically provides that the lists of injuries in the Code and in the regulations are not exclusive. *Id*; 25A S.C.Code Ann.Regs. 67–1101(B) (1976). Instead, the Code requires the commission to convert injuries to unscheduled members into a percentage of impairment to whole person pursuant to either the American Medical Association's "Guides to the Evaluation of Permanent Impairment" or "any other accepted medical treatise or authority." 25A S.C.Code Ann.Regs. 67–1101(B) (1976). Accordingly, South Carolina courts are relieved from performing the complicated calculus involved in translating a rotator cuff injury into a percentage of lost use of the arm and other scheduled members.[6]

---

pain in the arm was an injury to a "scheduled member"). In *Owens–Illinois, Inc. v. Douglas*, the Georgia court of appeals initially termed the injury a shoulder injury, but later clarified that the claimant suffered a fracture of the head of the humerus, the upper arm bone. 151 Ga.App. 408, 260 S.E.2d 509, 511 (1979). Thus, the injury in *Douglas* was an arm injury, and the case does not support the functional limitation view.

**6.** The regulations' specific reference to the "AMA Guides" is particularly instructive. In announcing that its scheme held strongly to the functional limitation view, the Colorado court expressly disregarded the AMA Guides and stated that the resource was "irrelevant under the situs of the functional impairment test." *Langton*, 937 P.2d at 884.

Academically, a true application of a functional limitation analysis would not be distinctly different from analyzing an injury under the situs of the injury view. We believe part of the harm courts see in compensating every shoulder injury as merely a scheduled loss for the loss of use of an arm is that some shoulder injuries affect other parts of the body as well. *See Bumpus v. Massman Const. Co.*, 145 S.W.2d 458, 461 (Mo.App.1940) (stating that limiting a shoulder injury to the scheduled loss of an arm meant the commission disregarded the injury's effects on other portions of the claimant's body); *see also Bray v. Carrothers Const. Co.*, 131 Kan. 766, 293 P. 504, 506 (1930) (where one end of a fractured clavicle protruded backwards and into the shoulder

Additionally, the conclusion that our scheduled recovery scheme focuses on the site of the injury in determining the type of proper compensation finds support in this Court's case law. In *Gilliam v. Woodside Mills*, an employer argued that the hip joint was part of the leg, and that the claimant should therefore have been confined to the scheduled recovery for the loss of a leg. 319 S.C. at 387, 461 S.E.2d at 819. Disagreeing, this Court held that for workers' compensation purposes, the hip socket is part of the pelvis and not part of the leg. *Id.*

■ Undeniably, *Gilliam* stands for the proposition that our scheduled compensation scheme focuses on the site of the injury and not the resulting functional limitation. Accordingly, we hold that a rotator cuff injury is not properly compensable under the loss of use of an arm schedule. Instead, the proper course in these cases is to proceed pursuant to § 42–9–30(20) and use the AMA Guides or "any other accepted medical treatise or authority" to convert the injury to the rotator cuff into a percentage of impairment to the whole person.[7]

----

muscles, the court held that while the loss of use of the proximate arm may have been sufficient to *support* an award for the scheduled loss of an arm, the fact that the arm was affected did not justify *limiting* the award to that schedule). Under a true "functional limitation" view, the proper approach would be to analyze the limitations caused by the shoulder injury beyond the arm and into the back, neck, and other areas of the body. In awarding compensation based upon an unscheduled injury's percentage of impairment to the whole person, § 42–9–30(20) performs exactly this analysis.

7.  Respondents argue that under the AMA Guides, a shoulder injury is to be converted to an injury to the upper extremity. While we agree in part, this argument stops short of what the statute requires. Section 42–9–30(20) clearly provides that otherwise unscheduled injuries are to be converted to a percentage of impairment to the whole person. Additionally, because the AMA Guides describe the "upper extremity" as consisting of the hand, wrist, elbow, and shoulder, translating a shoulder injury into a percentage of "upper extremity" impairment would be of no use in determining the proper listed schedule for recovery. *See* AMA GUIDES, 13.

In addition to *Gilliam*, both parties discuss *Roper v. Kimbrell's of Greenville*, 231 S.C. 453, 99 S.E.2d 52 (1957). We find, however, that *Roper* has little to do with the instant case. In *Roper*, an employee suffered a separated shoulder, and the commission awarded benefits under the former version of the loss of an arm schedule. *Id.* at 454–55, 99 S.E.2d at 53–54. Because the employer, and not the claimant,

Turning to the instant case, however, we believe Petitioner is procedurally barred from receiving the relief she requests from this Court. Before the single commissioner, Petitioner claimed that her shoulder injury entitled her to a general disability award under § 42-9-10. The commissioner disagreed and found Petitioner was precluded from seeking such an award by the inability to show a loss in earning capacity. Before the appellate panel, Petitioner again sought a general disability award, and continued to describe her injury in terms of its effects on her ability to use her arm.

In order to seek an award under § 42-9-30(20), Petitioner should have introduced evidence supporting this claim at these initial proceedings. In our view, Petitioner's requested relief is incredibly instructive. Petitioner asks for the case to "be remanded to the workers' compensation commission for a determination as to the proper ratio for a shoulder injury as it bears to the whole man." Petitioner did not present any evidence of the percentage of impairment to her shoulder, and furthermore, as Respondents point out, "Petitioner did not introduce any evidence to establish that the shoulder has a higher value in relation to the whole man ... [i]ndeed, the AMA Guides establish just the opposite...."

■ As this Court has stated, the burden is on the claimant to prove that an injury is compensable within the act. *Walker v. City Motor Car Co.*, 232 S.C. 392, 396, 102 S.E.2d 373, 374 (1958). Though the workers' compensation commission carries the duty to determine how an injury is compensable, the commission makes this decision based on submitted evidence, not out of thin air. To grant the relief Petitioner seeks, we would need to allow Petitioner to present the commission with evidence not found in the record on appeal; effectively providing Petitioner with a "second bite at the apple." This case does not justify such a significant departure from our rules.

Accordingly, we hold that the commission's decision is not clearly erroneous in view of the reliable, probative, and substantial evidence in the record. The vast majority of the evidence in the record, including Petitioner's own testimony,

---

contested the award on appeal, the Court was not forced to consider the claimant's entitlement to an award for the shoulder injury beyond the scheduled recovery for loss of an arm.

describes Petitioner's injury only in terms of its effects on her ability to use her arm.

We believe a factor driving much of the confusion on this issue is that the scheduled member statutes speak in a different language from medical service providers and the AMA Guides. While the scheduled member statutes use terms like "arm" and "leg," the AMA guides classify unscheduled injuries according to their effect on a person's "upper or lower extremities." *See* AMA GUIDES, 20, 85 (providing tables converting various impairments from the upper and lower extremities to percentages of impairments to the whole person).

The instant case illustrates how this disconnect can be problematic. We take this opportunity to emphasize the need for the commission to examine the particular injury at issue in every case to determine how a physician's or medical service provider's impairment rating is properly applied; either to a listed schedule, or translated to a percentage of impairment to the whole person pursuant to the AMA Guides.

## CONCLUSION

For the foregoing reasons, we modify the court of appeals' decision, and affirm.

WALLER, BURNETT and PLEICONES, JJ., and Acting Justice J. ERNEST KINARD, JR., concur.