## 17671

Louis SINGLETON, Respondent, v. YOUNG LUMBER COMPANY and Granite State Fire Insurance Company, Appellants

(114 S. E. (2d) 837)

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Appellants,*

*Messrs. Dowling, Dowling & Sanders,* of Beaufort, *for Respondent,*

456

*W. Francis Marion, Esq.,* of Greenville, and *Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, and *McKay, McKay, Black & Walker,* of Columbia, and *Whaley & McCutchen,* of Columbia, *of Counsel, for Amicus Curiae, in behalf of Appellant,*

*Messrs. W. K. Charles, President,* of Greenwood, *Terrell L. Glenn, Vice-President,* of Columbia, and *Richard J. Foster, Secretary-Treasurer, for Amicus Curiae, South Carolina Plaintiff's Attorneys Association, in behalf of Respondent,*

June 15, 1960.

Moss, Justice.

This is a proceeding for compensation under the Workmen's Compensation Act, Section 72-1 *et seq.*, Code of 1952, instituted by Louis Singleton, respondent, against Young Lumber Company, employer, and Granite State Fire Insurance Company, carrier, appellants.

The respondent did, on August 16, 1956, while in the employ of Young Lumber Company, fall from a scaffold on a building under construction into an open septic tank, receiving a compound comminuted fracture of his right tibia and fibula at the ankle level, and other injuries. It appears that the respondent was treated by a local physician in Beaufort, South Carolina, who referred him to Dr. John A. Seigling, Orthopedic Surgeon of Charleston, South Carolina, for treatment. The respondent was hospitalized in Roper Hospital, in Charleston, South Carolina, from the day of his injury until September 25, 1956. Upon being discharged

from the hospital, the respondent returned to his home on St. Helena Island in Beaufort County.

It appears that on August 31, 1956, the parties entered into an agreement on Industrial Commission Form 15, wherein it was admitted that the respondent had received an injury arising out of and in the course of his employment. This agreement provided for the payment of $24.00 per week from August 24, 1956, "until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of South Carolina". This agreement was approved by the Industrial Commission on September 5, 1956. Compensation payments were made under the foregoing award for total disability until July 15, 1957. Apparently the appellants stopped payment of compensation after receiving the report of Dr. Siegling that the respondent was released from further medical treatment as having reached maximum improvement. This surgeon rated the respondent as having sixty per cent disability of his right foot. Thereafter, the appellants, through their counsel, offered to counsel for the respondent, by way of settlement, a payment of compensation for sixty per cent disability of the right foot and Two Thousand ($2,000.00) Dollars for serious bodily disfigurement, which offer was rejected.

It appears from the record that the appellants stopped payment of compensation under the foregoing award without complying with Section 72-352 of the 1952 Code of Laws and Rule 12 of the Industrial Commission.

A hearing was fixed for October 16, 1957, before a Single Commissioner, for the purpose of determining whether or not the appellants had the right to permanently stop payment of compensation, which the Industrial Commission had ordered the appellants to pay, under the agreement approved on September 5, 1956, to which reference has heretofore been made. At the beginning of this hearing the appellants took the position that no hearing should be held until the respondent submitted to an examination by Dr. Robert M.

Paulling, an Orthopedic Surgeon in Charleston, as was demanded on September 26, 1957. It further appears that when the appellants demanded that the respondent appear for examination by Dr. Paulling that they tendered a check for travel expenses of the respondent. The respondent, through his counsel, refused to go to Charleston for examination by Dr. Paulling and the expense check was returned.

The motion for a delay of the hearing until the respondent submitted to an examination by Dr. Paulling was orally denied by the Single Commissioner. The employer and carrier appealed the oral denial of this motion to the Full Commission, which said appeal was, by letter, denied, on the ground that such was premature. An appeal was taken to the Circuit Court which resulted in the Trial Judge dismissing such.

The scope of the hearing before the Single Commissioner was not only to determine whether or not the appellants had the right to permanently stop payment of compensation, under the approved agreement heretofore referred to, but for the purpose of determining the nature and extent of any disability and disfigurement of the respondent. At the hearing before the Single Commissioner, the testimony of the respondent was taken, and that of Doctors Stanley F. Morse and B. H. Keyserling. The record also shows that the deposition of Dr. John A. Siegling was taken in Charleston on October 27, 1957.

Thereafter, the Single Commissioner filed his opinion and award, wherein he held that the respondent sustained an accidental injury on August 16, 1956, arising out of and in the course of his employment. He also found that the parties entered into an agreement as to compensation on August 31, 1956, which said agreement was approved by the Industrial Commission on September 5, 1956, in accordance with Sections 72-351 and 72-357, of the 1952 Code of Laws. He held that the appellants, without authority, violated the aforesaid agreement and award by arbitrarily stopping the

.payments of compensation on July 15, 1957, without complying with Section 72-352 of the Code, and Rule 12 of the Commission. He assessed a ten per cent penalty, pursuant to Section 72-159 of the Code, for the failure of the appellants to pay the compensation in accordance with the terms of the agreement approved by the Commission. He also held that the respondent was totally disabled, and the payment of compensation was governed by Section 72-151 of the Code.

As we have heretofore stated, the Single Commissioner held that the respondent did not give up his right to compensation by his refusal to submit himself to an examination by Dr. Robert M. Paulling. He held that the demand of the appellants for the further examination of the respondent was untimely and unreasonable, and that the refusal by the respondent was fully justified. The appellants made timely application for a review before the Full Commission of the findings and award made by the Single Commissioner. A majority of the Full Commission affirmed the award of the Single Commissioner. From the findings and award of the majority of the Full Commission, an appeal was made to the Court of Common Pleas for Beaufort County, and such appeal was heard by the late Honorable E. H. Henderson, Presiding Judge, who affirmed the opinion and award of a majority of the Full Commission. Timely appeal to this Court followed. The exceptions of the appellants, in our opinion, raise three questions for determination. (1) Was the respondent justified in refusing to undergo an examination by Dr. Paulling as demanded by the appellants? (2) Did the Trial Judge commit error in affirming the Industrial Commission in assessing the ten per cent penalty for their failure to make the compensation payments under the terms of an agreement entered into by the appellants with the respondent, and approved by the Industrial Commission, without complying with Section 72-352 of the 1952 Code of Laws and Rule 12 of the Commission? (3.) Whether total disability may be awarded to the respondent under Section 72-151 of the 1952 Code of Laws of South Carolina, when the sole

basis, of such award is the loss, or partial loss, of use of a member of the body for which compensation is specifically provided for under Section 72-153 of the Code?

We shall first determine whether the respondent was justified in refusing to undergo an examination by Dr. Paulling as demanded by the appellants. The statute, Section 72-307 of the 1952 Code, provides:

"After an injury and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Commission, shall submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Commission. * * * If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his right to take or prosecute any proceedings under this Title shall be suspended until such refusal or objection ceases and no compensation shall at any time be payable for the period of suspension unless in the opinion of the Commission the circumstances justify the refusal or obstruction."

In the case of *Ward v. Dixie Shirt Co., Inc., et al.,* 223 S. C. 448, 76 S. E. (2d) 605, 608, this Court, with reference to the above statute, had this to say:

"It will be noted that if an employee fails to comply with the foregoing requirement, his employer may stop compensation payments 'unless in the opinion of the Commission the circumstances justify the refusal'. Where the facts are disputed and are subject to more than one reasonable inference as to whether the employee is justified in refusing to submit to an examination requested by his employer, the conclusion of the Industrial Commission thereabout is final. But where the circumstances warrant only one reasonable inference, the question becomes one of law rather than of fact and the decision of the Industrial Commission is subject to review. *Hill v. Skinner,* 195 S. C. 330, 11 S. E. (2d) 386. It was there held that the requirement of the statute was

mandatory and that under the facts of that case, the conclusion of the Commission that the employee was justified in refusing to submit to an examination was without evidentiary support and should be reversed."

Applying the foregoing rule to the facts of this case, is there any reasonable basis for the conclusion of the Industrial Commission, which was affirmed by the Circuit Court, that the respondent was justified in refusing to undergo an examination by Dr. Robert M. Paulling as demanded by the appellants? It appears that immediately following the injury to the respondent he was examined and treated by Dr. B. H. Keyserling. This physician referred the respondent to Dr. John A. Siegling, an Orthopedic Surgeon of Charleston, South Carolina. The respondent became a patient in Roper Hospital on the day of his injury, and it was there that he was treated by Dr. Siegling until September 25, 1956, when he was discharged and returned to his home. The respondent testified that thereafter he traveled from his home on St. Helena Island in Beaufort County to Charleston, South Carolina, a distance of approximately 85 miles, on eight occasions to see Dr. Siegling. It was necessary for the wife of the respondent to accompany him on these trips because of his physical condition. A trip to the office of the physician in Charleston involved the obtaining of a ride by the respondent from his home to Beaufort, a distance of 15 miles, the taking of a bus and a transfer at Gardens Corner, and on arriving in Charleston, the obtaining of a taxicab to the doctor's office. The return trip would be by the same route and manner, and the entire round trip would take all day. The respondent was examined by Dr. Siegling each time that he went to his office. When the appellants demanded the additional examination by Dr. Robert M. Paulling they assigned no reason for such. It also appears that the respondent reported to and was examined by Dr. Keyserling approximately twelve times after he was discharged by Dr. Siegling. The respondent was also examined by Dr. Stanley F. Morse. All three of these physicians testified in this case, giving dif-

ferent ratings as to the physical impairment of the respondent. It appears that the respondent has fully co-operated with these doctors.

We think the facts in this case, and in view of the co-operation of the respondent with the doctors, reasonably warrant the conclusion of the Commission that the respondent was justified in refusing to undergo further examination by Dr. Paulling, as was demanded by the appellants.

The next question for determination is whether the Trial Judge committed error in affirming the Commission in assessing a ten per cent penalty for the failure of the appellants to make the compensation payments under the terms of an agreement entered into by the parties and approved by the Commission. The respondent and the appellants entered into an agreement pursuant to Section 72-351 of the 1952 Code, which said agreement was approved by the Commission. This agreement and award provided for the payment of compensation from August 24, 1956, "until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of South Carolina." This agreement for the payment of compensation, when approved by the Commission, was as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal. *Allen v. Benson Outdoor Advertising Co. et al.,* S. C., 112 S. E. (2d) 722. The agreement approved by the Commission could be enforced as is provided in Section 72-357 of the 1952 Code. It was held in the case of *Brown & Sharpe Mfg. Co. v. Giacoppa,* 69 R. I. 378, 33 A. (2d) 419, that where an agreement as to Workmen's Compensation has been entered into and approved by the Director of Labor, that such has the force and effect of a Court decree until modified or terminated in accordance with the provisions of the Workmen's Compensation Act. How could the appellants here be relieved of further payments of compensation under the agreement approved by the Commission? Section 72-352 of the Code provides that when there is a disagree-

ment among the parties "as to the continuance of any weekly payment under such agreement, either party may make application to the Commission for a hearing in regard to the matters at issue and for a ruling thereon." Rule 12 of the Commission provides that:

"Compensation cannot be discontinued after an award has been made or an agreement between parties approved until the full award has been paid, except that in case the award is made during disability. Such disability is presumed to last until the employee returns to work, and in the event the insurance carrier or employer desires to stop payment of compensation, the insurance carrier or employer must file a request to discontinue the payments of compensation, setting forth reasons and serving notice upon employee. Upon such request, supported by proper medical certificate, the Commission will issue an order allowing the insurance carrier to stop compensation and will place the case upon the calendar for hearing, if necessary. Every approval of an agreement will be treated as an award."

In the case of *Halks v. Rust Engineering Co. et al.,* 208 S. C. 39, 36 S. E. (2d) 852, 854, this Court said:

"Section 57 of the Act, Section 7035-60 (now Section 72-352 of the Code of 1952) of the Code of 1942, and Rule 12 of the Commission contemplate that if the insurance carrier desires to stop further payment of compensation under a temporary award, application should be made to the Commission for permission to do so. Notice should be given to the employee. The question can then be determined by the Commission. Where there is a disagreement between the parties as to the right to discontinue further weekly compensation, the matter will be placed on the calendar for a hearing. If it is determined that the carrier is entitled to discontinue further payments of total temporary disability, the question of any permanent disability or disfigurement would then be ripe for determination. But apart from the foregoing requirements we do not think the right of a claimant to further compensation can be adjudicated without notice to

him and an opportunity afforded for a hearing, if he desires to contest the issue."

The case of *Carpenter v. Globe Indemnity Company,* 65 R. I. 194, 14 A. (2d) 235, 239, 129 A. L. R. 410, is almost identical with the instant case. In that case an agreement was entered into by the employer and the injured employee under the Workmen's Compensation Act, and such was approved by the Director of Labor, as provided by that Act. Compensation payments were made to the employee pursuant to such agreement and award until a physician, who had been treating, the employee, notified the employer that he had discharged the employee from further treatment. Compensation payments were stopped upon receipt of this notice without following the procedure prescribed for such termination. The Rhode Island Supreme Court held that a compensation agreement entered into between an employer and an employee, under the Workmen's Compensation Act, is equivalent to a decree, being an act of the parties approved by an administrative officer, and enforceable in precisely the same way as a decree. The Court said:

"Such an agreement is, therefore, not a simple contract but is equivalent to a decree. Indeed, the act provides for its enforcement precisely as for the enforcement of a decree. It is not only a meeting of the minds of the parties, it is that and something more; it is a solemn act of the parties solemnly approved by an impartial officer of the state and, as such, it is solemnly recorded in the office of the director of labor. The legislature must have intended that such solemnity was to serve some useful purpose. We think it was to assure the injured employee of the protection of his rights under the act. To permit the employer to decide that he was no longer bound by the agreement, because of a change which he claims has occurred in the factual situation, upon which the agreement was originally founded, would be to set at naught such solemnity and greatly to weaken such protection, besides setting up the employer, in the first instance, as the judge of whether his obligation under the agreement still continued.

. "We are of the opinion that the legislature intended to guard the injured employee against just such a situation and that, while encouraging the parties to enter into agreements without the necessity and expense of a judicial hearing, it took care that such agreements should not easily be avoided by providing, in effect, that they should have the same force as decrees of the court in settling the rights and obligations of the parties. And to make sure that such agreements entered into *in pais* would not only be of such binding force, but also that they would not be detrimental to the rights of the injured workman, the legislature further provided for their approval by the director of labor before they went into effect."

In this same case the Court pointed out that a factual situation arose and would have to be determined as such. The Court said:

"* * * Who is authorized to find that fact? Clearly not the employer, either from his own knowledge or from an opinion, professional or otherwise, obtained from another. Having once agreed, with the approval of the director of labor, that the injured employee's disability was total, that fact was as definitely settled as if it were a finding incorporated in a decree under the statute. Clearly also the employee cannot determine this question. In our opinion, a finding that such disability has ended or diminished can be reached only by a supplemental agreement, also approved by the director of labor, or by a decree or order of the director after a hearing on a petition for review. * * *"

The appellants assert that they were entitled to discontinue weekly compensation payments to the respondent for the reason that Dr. Siegling had found that he needed no further medical treatment and had reached maximum improvement. In this situation, the appellants should have made application to the Commission for permission to discontinue such payments, giving notice thereof to the respondent. It was for the Commission, after a hearing, to determine whether the appellants had the right to discontinue the week-

ly payments of compensation. The appellants should have followed the procedure outlined in Section 72-352 of the 1952 Code of Laws of South Carolina, and Rule 12 of the Commission. This they did not do. The conclusion is inevitable that the appellants stopped compensation payments to the respondent without having the legal right so to do.

Section 72-159 of the 1952 Code of Laws of South Carolina provides that if any installment of compensation, payable in accordance with the terms of an agreement approved by the Commission, is not paid within fourteen days after it becomes due, there shall be added to the unpaid installment an amount equal to ten per cent thereof, unless such non-payment is excused by the Commission after a showing by the employer that owing to conditions over which he had no control, such installment could not be paid within the period prescribed for the payment. The Commission did not excuse the appellants from the payment of the weekly compensation installments due the respondent in accordance with the terms of an agreement approved by the Commission, to which reference has heretofore been made. Therefore, the Commission had the statutory right to add the ten per cent penalty for the failure of the appellants to make prompt payment of the weekly compensation. We think that the Trial Judge was correct in affirming the Commission's ruling that the appellants arbitrarily stopped payment of compensation without complying with the provisions of the Workmen's Compensation Act.

The next question for determination is whether the Commission was correct in awarding compensation to the respondent, under Section 72-151 of the 1952 Code, for total disability, or whether the compensation should have been limited to that fixed specifically for the partial loss of the use of a leg, as provided in Section 72-153(15) of the 1952 Code.

The Single Commissioner found, and such was approved by the Full Commission and the Circuit Judge, the following:

"The claimant in his fall in addition to the severe injury to leg suffered minor contusion to his right elbow and the side of his head. He testifies that he is presently having very little effects from the head and arm bruises but that occasionally the arm feels a little numb and occasionally his head aches with associated dizziness. These injuries have no bearing at the present on the conclusions herein reached It is only the leg which makes up the claimant's present disabling conditions."

The Single Commissioner's opinion recited that the testimony of the respondent shows that the injury to his right leg caused total disability, in that he was unable to do any lifting, climbing, walking or any of the physical activities required of a laborer. He recites that Dr. John A. Siegling rates the respondent with a sixty per cent loss of the use of his right leg, that Dr. B. H. Keyserling rates the loss at fifty per cent of the whole body, and that Dr. Stanley F. Morse rates the loss at seventy-five to eighty per cent of the whole body, and this physician stated that "for heavy day labor work I think this type of injury would give him almost a total disability." The Commissioner found that "each of these ratings is based on the leg injury to the exclusion of any injury to the arm and head." Under the foregoing testimony, the Commissioner found that the respondent was totally disabled and that Section 72-151 of the 1952 Code governs the payment of compensation for such total disability.

Section 72-151 of the 1952 Code provides compensation for total disability, as follows:

"When the incapacity for work resulting from an injury is total, the employer shall pay, or cause to be paid, as provided in this chapter, to the injured employee during such total disability a weekly compensation equal to sixty per cent of his average weekly wages, but not more than thirty-five dollars, nor less than five dollars a week; and in no case shall the period covered by such compensation be greater than five hundred weeks.

"The loss of both hands, arms, feet, legs or vision in both eyes, or any two thereof, shall constitute total and permanent disability, to be compensated according to the provisions of this section."

Section 72-153 of the 1952 Code, provides:

"In cases included in the following schedule, the disability in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein, to wit:

\* \* \*

"(15) For the loss of a leg, sixty per cent of the average weekly wages during one hundred and seventy-five weeks;

\* \* \*

"(18) Total loss of use of a member \* \* \* shall be considered as equivalent to the loss of such member \* \* \*.

"The compensation for partial loss of or for partial loss of use of a member \* \* \* shall be such proportion of the payments above provided for total loss as such partial loss bears to total loss."

In the case of *G. E. Moore Co. et al., v. Walker et al.,* 232 S. C. 320, 102 S. E. (2d) 106, this Court was asked to determine the correct method of calculating compensation benefits for partial loss or for partial loss of use of various members of the body enumerated in Section 72-153 of the 1952. Code. We held that determining the amount to be awarded under the aforesaid section that wages are considered only for the purpose of determining the amount to be allowed per week. The period during which the weekly payments are to continue is based solely on the character of the injury and not upon the earnings or earning capacity of the injured employee.

In the case of *Ingle v. Mills et al.,* 204 S. C. 505, 30 S. E. (2d) 301, 303, it was said:

"Workmen's compensation, except specific benefits and that allowed for disfigurement under the present law, is for

loss or impairment of capacity to obtain employment and earn wages. * * *"

In the case of *Burnette v. Startex Millls et al.*, 195 S. C. 118, 10 S. E. (2d) 164, 166, this Court said:

"The whole philosophy of our Workmen's Compensation Act is to compensate for, or relieve from, the loss or impairment of an employee's capacity to earn, or from the deprivation of support from his earnings, and not to indemnify for any physical ailment or impairment as such except in the classes of case specifically provided in the Act; to exclude from allowable elements of compensation everything except diminution of earning power. Bodily disfigurement, when shown to affect this earning power, is therefore logically an element of compensation specifically provided for in the Act, to the extent therein covered, and we have heretofore so applied the Act."

In Schneider's Workmen's Compensation, Volume II, Section 2322, at page 563, it is said:

" * * * the right of compensation for a permanent injury to a member of the body is measured by the extent of the injury, regardless of the degree of disability, and a fixed amount is to be paid without considering, but including all incapacity to labor that may be connected therewith, whether such incapacity be total, partial, or no incapacity at all."

At page 567, it is also stated:

" 'That a workman sustaining one of the minor injuries for which specific compensation is provided under the statute might, because of such injury, be unable to resume his employment and, because of his lack of education or experience or physical strength or ability, might be unable to obtain other employment, does not entitle him to be classed as totally and permanently disabled.' It was intended to make certain the compensation for specific injuries and not leave the matter to the discretion of the Commission. It is a vested right not contingent upon nor affected by the employee's life expectancy."

The finding of the Commission in this case was that "It is only the leg which makes up the claimant's present disabling conditions." Therefore, the injury to the respondent is confined to a scheduled member of the body. Where the injury is confined to the scheduled member, and there is no impairment of any other part of the body because of such injury, the employee is limited to the scheduled compensation, even though other considerations such as age, lack of training, or other conditions peculiar to the individual, effect a total or partial industrial incapacity. To obtain compensation in addition to that scheduled for the injured member, claimant must show that some other part of his body is affected. *Brown v. State Workmen's Ins. Fund,* 131 Pa. Super. 226, 200 A. 174; *Consolidated Underwriters v. Langley,* 141 Tex. 78, 170 S. W. (2d) 463; *Godbee v. American Mutual Liability Insurance Company et al.,* 95 Ga. App. 86, 96 S. E. (2d) 648; and *Armour & Company v. Walker,* 99 Ga. App. 64, 107 S. E. (2d) 691, and *Globe Indemnity Co. et al., v. Brooks,* 84 Ga. App. 687, 67 S. E. (2d) 176, 178. In the last cited case it appears that one Brooks received serious multiple fractures of his left leg and knee joint, multiple contusions and abrasions of the right hand, thigh and knee, and contusions of the right chest wall, all of which resulted in developing a nervous condition and an aggravation of a heart condition. An award was made to the claimant for total incapacity to work. It was held that although claimant suffered disability to his specific member, which would have entitled him to compensation for a lesser maximum period of time, the finding of such injury was superadded so as to affect other portions of his body and entitle him to an award for total disability. In the course of the opinion affirming the award, it was said:

"* * * It is also indisputable that a disability resulting from loss or loss of use of a specific member, where there is no superadded injury or disease affecting other portions of the body, should be computed under Code, § 114-406, providing schedules of compensation relating to loss

of specific members, rather than Code, § 114-404, providing for total incapacity to work, and this is true even though the claimant is totally incapacitated at the time. * * *"

In the case of *M. T. Reed Construction Company v. Martin,* 215 Miss. 472, 61 So. (2d) 300, 303, the employee was a skilled carpenter who sustained a break of the lower third of the right femur bone. There was evidence of atrophy of the right knee joint, and that upon trying to make an ascent in the performance of his work, the claimant's knee would "flop". The claimant had been unable to perform his duties since his injury, with the exception of doing some light work. The Commission found a permanent and total loss of use of claimant's right leg. The employee filed an appeal alleging that he was totally and permanently disabled, but the Mississippi Supreme Court dismissed such appeal and affirmed the award of the Commission, saying:

"The cross-appeal contends that, since Martin is totally and permanently disabled, he is entitled to permanent, total disability for 450 weeks under provisions of subd. (a), Section 8 of said chapter. But the disability with which we deal is occasioned by the loss of the use of the leg, and the maximum period for which recovery is permitted, on that account, is fixed arbitrarily at 175 weeks."

In the case of *Consolidated Underwriters v. Langley, supra* [141 Tex. 78, 170 S. W. (2d) 464], it appears that the employee suffered from a fracture of the tibia and distal fibula of the right leg. Claimant contended that he was unable to carry on his work and was totally and permanently incapacitated. The Texas Court held:

"Where injury results to a particular member of the body, compensation for the loss of which is specifically provided by statute, the liability of the insurer is limited to that amount, even though the loss of or injury to that particular member actually results in total permanent incapacity of the employee to labor."

Since the Commission has found as a fact that it is only the leg which makes up the respondent's disabling condition, and the leg being scheduled under Section 72-153 of the 1952 Code, the respondent is limited to the scheduled compensation fixed in said statute. We are not at liberty to extend by construction the meaning implicit in the language found in the Workmen's Compensation Act in order to provide a more liberal rule of compensation than that which the legislature has seen fit to adopt. *Rudd v. Fairforest Finishing Company et al.,* 189 S. C. 188, 200 S. E. 727.

We conclude that the Industrial Commission was in error in awarding compensation under Section 72-151 of the 1952 Code. Under the testimony and the findings of fact made by the Commission, the respondent was entitled to an award under Section 72-153 of the 1952 Code.

For the reasons herein stated, the lower Court is reversed and this case remanded to the Court of Common Pleas for Beaufort County to be by it remanded to the Industrial Commission, with instructions that it render its award in accordance with the views herein expressed.

Reversed and remanded.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.