0063

Lorton MACKEY, Respondent, v. KERR-McGEE CHEMICAL COMPANY and The Home Insurance Company, Appellants.

(312 S. E. (2d) 565)

Court of Appeals

*G. Dana Sinkler,* of *Sinkler Gibbs & Simons,* Charleston, *for appellants.*

*Arthur C. McFarland.* of *McFarland & Jenkins,* Charleston, *for respondent.*

February 6, 1984.

*Per Curiam:*

At issue in this appeal is whether a worker's compensation claimant, prior to execution of formal closing papers and approval by the South Carolina Industrial Commission, can unilaterally repudiate an offer of settlement that has been accepted by his attorney. The Commission held that a settlement agreement entered into by Attorney Hugo M. Spitz on behalf of his client, the respondent Lorton Mackey, was a legally binding and enforceable settlement; however, the Honorable Klyde Robinson, Circuit Judge, in an order dated April 21, 1981, reversed the Commission. Kerr-McGee Chemical Company and Home Insurance Company appeal. We affirm.

Because Judge Robinson's order properly sets forth and disposes of the principal issue presented to us, his order, as we have modified and supplemented it, is adopted and published as our view. The modifications and supplements are reflected by either ellipses or bracketed material. Following Judge Robinson's order, we have added an addendum and a mandate.

## ORDER OF JUDGE ROBINSON

[The claimant Mackey, an employee of Kerr-McGee Chemical Company,] appeals from an Order of the South Carolina Industrial Commission, dated April 30, 1979, which provided that a settlement agreed upon by and

between the parties through their attorneys was a legally binding and effective settlement that should be enforced. [T]he Order must be reversed.

... A hearing [on Mackey's claim] was scheduled by Hearing Commissioner [Sarah] Leverette for August 23, 1977, at which time all parties, counsel, and witnesses were present. Prior to the hearing, claimant's and carrier's respective attorneys agreed to settle the case for Six Hundred Dollars ($600.00). Although there is a dispute between claimant and his then attorney ... as to whether claimant orally accepted the settlement, it is undisputed that at the call of the case, claimant's and carrier's attorneys appeared before Commissioner Leverette without claimant and announced to her that the case had been settled. The hearing was dispensed with without any approval or disapproval of the settlement by Commissioner Leverette.

Subsequently, on September 28, 1977, ... Spitz called claimant to his office for the purpose of executing the closing papers for the settlement agreement. However, claimant rejected the settlement and refused to execute the written settlement agreement.... Spitz thereafter notified the attorney for the carrier and Commissioner Leverette that he was withdrawing as attorney for claimant after which claimant retained the services of his present attorney. A hearing was held on February 22, 1978, again before Commissioner Leverette, [after] which hearing no decision was rendered. In an order dated December 7, 1978, Commissioner Reid, upon review of the testimony regarding the settlement, found as a matter of fact that claimant's original attorney had the authority both to enter into the settlement and to announce it to the Hearing Commissioner and concluded as a matter of law that the settlement was legally binding on claimant. The Full Commission, on April 30, 1979, affirmed the Order of Commissioner Reid by a 3-3 decision.

The issue presented by the appeal is whether the claimant could unilaterally repudiate an offer of settlement that had been accepted by his counsel and/or claimant prior to approval by the South Carolina Industrial Commission. S. C. Code Ann. § 42-1-310 (1976) makes it clear that matters involving compensation claims of employees are governed exclusively by the [worker's] compensation act. Thus, the issue

must be determined in light of the requirements and policies of [worker's] compensation law in particular, rather [than] . . . contract law in general.

S. C. Code Ann. § 42-9-390 (1976) provides that:

[n]othing contained in this chapter shall be construed so as to prevent settlements made by and between an employee and employer so long as the amount of compensation and the time and manner of payment are in accordance with the provisions of this Title. A copy of any such settlement shall be filed by the employer with and approved by the *Commission*. (Emphasis added.)

Although voluntary settlements between the employer or its carrier and the claimant are encouraged under [worker's] compensation law, § 42-9-390 specifically requires approval by the Commission of such settlements. The section does not, however, expressly answer the question of whether a settlement duly entered into is binding prior to Commission approval; moreover, . . . no South Carolina case . . . directly answers this question. In *Singleton v. Young Lumber Co.*, 236 S. C. 454, 114 S. E. (2d) 837 (1960), however, the Supreme Court indicated that the policies supporting the requirement of approval also support the result that settlement agreements are not binding until they have been approved.

In *Singleton*, [the] employee, employer, and employer's carrier had entered into an agreement for compensation, which subsequently was approved by the Commission. Sometime later, without seeking the approval of the Commission, the carrier stopped making the weekly payments to which it had agreed. In reaching the conclusion that the employer was bound by the agreement unless and until the Commission determined that the employer had the right to stop making payments, the court reviewed the policies justifying the requirement of Commission approval. The Court, quoting a Rhode Island case, *Carpenter v. Globe Indem. Co.*, 65 R.I. 194, 14 A. (2d) 235 (1940), isolated two justifications for the approval requirement: " 'to make sure that such agreements entered into in pais would only be of . . . binding force, but also they would not be detrimental to the rights of the injured workman. . . .' " [114 S. E. (2d) at 84.] Thus, the requirement of approval injects two procedural safeguards — first, that the interests of the claimant would be considered by an objective

official, and second, that the status of the agreement would be elevated to that of a judicial decree, for enforcement purposes. It is the first of these two safeguards that bears directly on this case. If one purpose of the approval requirement is to ensure that the settlement agreement equitably protects the interests of the injured employee, then how could those interests be protected if the settlement agreement is held binding prior to its approval? This question is expressly answered in *Carpenter*, the Rhode Island case quoted at length in *Singleton:*

> Until it has received the express approval of the administrative officer, who is charged with the enforcement of the [worker's] compensation act, and who is vested with a substantial portion of judicial power in the disposition of cases arising under it, the agreement is totally lacking in contractual force even though the parties thereto have done all that would be necessary to constitute a binding contract between them under the law of contracts.

[14 A. (2d) at 239.] Although this particular language is not quoted in the *Singleton* opinion, the following dictum indicates that the South Carolina Supreme Court agreed with the position of the Rhode Island Supreme Court. "This agreement for the payment of compensation, *when approved by the Commission,* was as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal." [114 S. E. (2d) at 841] (Emphasis added.)

This conclusion, that a [worker's] compensation settlement agreement is not binding until it has been approved, apparently has been reached by all jurisdictions that have decided the question. . . . *Raischell & Cottrell, Inc. v. Workmen's Comp. Appeals Bd.,* 249 Cal. App. (2d) 991, 58 Cal. Rptr. 159 [(1967)]; *Taylor v. Sunnyland Packing Co.,* 112 Ga. App. 544, 145 S. E. (2d) 587 (1965); *Industrial Track Builders of America v. Lemaster,* 429 S.W. (2d) 403 [(Ky. App. 1968)]; *Pepitone v. State Farm Mut. Ins. Co.,* 346 [So. (2d) 266 (La. App. 1977)]; *National Gypsum Co. v. Brewster,* 461 P. (2d) 593 (Okl. 1969); *Esco v. Argonaut Ins. Co.,* 405 S.W. (2d) 860 [(Tex. Civ. App. 1966)]; [*Colbert v. La. State Dental School,* 436 So. (2d) 665 (La. App. 1983); *Breland v. Louisiana Pacific Corp.,* 698 F. (2d) 773 (5th

Cir. 1983); *Baldwin v. Piedmont Woodyards, Inc.*, 58 N. C. App. 602, 293 S. E. (2d) 814 (1982); *Rogers v. Concrete Sciences, Inc.*, 394 So. (2d) 212 (Fla. App. 1981); *Gross v. National Health Enterprises, Inc.*, 582 S.W. (2d) 379 (Tenn. 1979); *Jasmin v. Gafney, Inc.*, 357 So. (2d) 539 (La. 1978); *see also* A. Larson, *The Law of Workmen's Compensation* § 82.60 at 15-565 (1983)]. *Pepitone* is of particular note, for in that case, the mirror image of [this] case . . . , the employer's carrier refused to perform a compensation agreement that had been offered and accepted. The court held that:

> [a]s the above quoted requirement of judicial approval of compensation settlements is necessary to protect the parties from unwise actions which may cause them serious detriment, and as that requirement appears to us to contemplate a proposed settlement to which all parties must agree at the time of the verifying and filing of the joint petition, we are satisfied that any party may unilaterally withdraw from the agreement prior to that time. Certainly, an employee or his dependents who had agreed to accept a settlement could withdraw from that agreement at any time prior to verification and filing, and we see no reason why the employer and his insurer cannot do the same thing. (Footnote omitted.)

[346 So. (2d) at 268.]

Counsel for the employer/carrier argues that because the claimant was represented by competent counsel and there had been shown no fraud or mistake in the acceptance of the offer, claimant is bound by the agreement. In support of this proposition, he cites [*Hall v. Benefit Ass'n of Railroad Employees*, 164 S. C. 80, 161 S. E. 867 (1932)], *Poore v. Poore*, 105 S. C. 206, 89 S. E. 569 (1916) [and *Dixon v. Floyd*, 73 S. C. 202, 53 S. E. 167 (1906)]. This argument is without merit. [These cases] did not involve a [worker's]compensation claim, and more importantly, [were] decided on principles of general contract law. [Contract. law principles are inapplicable here because § 42-1-310 provides that employee claims for compensation are governed exclusively by the worker's compensation act]. Thus, [*Hall*], *Poore*, [and *Dixon* are] inapplicable to the case at bar, and [*Mackey*] is not bound by the settlement arrived at between counsel. . . .

## ADDENDUM

We do not overlook the appellants' contention that a Commission rule, R67-24, supports their position. This argument does not appear to have been made before either the Commission or Judge Robinson. If it was advanced, neither the Commission nor Judge Robinson addressed the point. Further, the appellants' single exception does not expressly raise the issue. An issue either not raised below or not properly preserved by an exception presents no question for determination on appeal. *Murphy v. Hagan,* 275 S. C. 334, 271 S. E. (2d) 311 (1980). In any event, we do not think the contention has any merit.

The rule provides:

> In all cases where a claimant is represented by Legal Counsel, and a Settlement has been reached the Agreement will be approved by the Industrial Commission without judicial proceedings.

*S. C. Code Ann.,* Regulations, R67-24 (1976). The rule must be read, however, in the context of the requirements of § 42-9-390. The latter requires settlement agreements to be in writing and filed with the Commission. The requirement that a settlement agreement be committed to writing necessarily anticipates that the agreement will also be signed by the parties and that it will not be binding until they have done so. While closing papers which reflected the agreement of the parties had in fact been prepared in this instance, they were never signed; and until they were signed, the papers represented nothing more than a settlement proposal. *Cf.* 15A Am. Jur. (2d) *Compromise and Settlement* § 9 at 782 (1976). "[A] Settlement has been reached" within the contemplation of R67-24 only when the writing manifesting the terms of the compromise has been signed by the parties; thus, the Commission's rule affords the appellants no help.

Accordingly, the judgment below is affirmed.