543 S.E.2d 574

**William L. AARON, Claimant, Appellant,**

**v.**

**VIRO GROUP, Employer, and ITT Hartford, Carrier, Respondent.**

**No. 3306.**

Court of Appeals of South Carolina.

Heard Jan. 9, 2001.

Decided Feb. 26, 2001.

---

10. *Paschal v. State Election Comm'n,* 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995).

322

Franklin D. Beattie, of Aiken, for appellant.

Scott B. Garrett, of McAngus, Goudelock & Courie, of Columbia, for respondents.

ANDERSON, Judge:

William L. Aaron ("Aaron") appeals an order of the Circuit Court, which affirmed the determination of the full Workers' Compensation Commission ("Commission") that Aaron's rights to compensation and to take or prosecute any proceedings against his employer Viro Group and its workers' compensation carrier, ITT Hartford (collectively "Employer"), under the Workers' Compensation Act were suspended because of his failure to submit to a medical examination, as required by S.C.Code Ann. § 42–15–80. We reverse and remand.

## FACTS / PROCEDURAL HISTORY

Aaron injured his back at work on May 8, 1995. The injury was admitted by Employer, who provided medical treatment to Aaron by Dr. Edward Golay. Dr. Golay, a family practice physician, was designated by Employer as Aaron's treating physician. Dr. Golay treated Aaron on numerous occasions from the time shortly after Aaron's accident until December

1996. During this treatment, Dr. Golay referred Aaron for magnetic resonance imaging ("MRI") testing. Dr. Ross D. Lynch, a specialist in orthopedics, ordered an MRI for Aaron. The test was performed May 15, 1996. Following the MRI, Dr. Lynch assigned Aaron a 5% impairment rating and dismissed Aaron from his care on June 4, 1996. Dr. Golay continued to treat Aaron.

Dr. Golay referred Aaron to Dr. Randall G. Drye, a neurosurgeon, in November 1996. As a result of this referral, Dr. Drye examined Aaron and recommended surgery. Surgery was performed on Aaron's back on December 27, 1996. Employer refused to pay for this procedure. Following treatment, Dr. Drye informed Aaron he could return to work, but Employer laid him off.

In January 1997, Aaron filed a Form 50 request for a hearing. Aaron withdrew this request before the hearing took place. Aaron filed another Form 50 on June 12, 1997. By letter dated September 15, 1997, Employer requested Aaron attend a medical examination on September 30, 1997, pursuant to § 42–15–80. By letter dated September 29, 1997, Aaron's attorney stated Aaron could not attend on September 30, 1997, but would be available on or after October 5, 1997. Employer rescheduled the exam for October 13, 1997; however, Aaron did not appear for this scheduled evaluation.

Based on Aaron's refusal to submit to a medical evaluation, Employer filed a motion to compel Aaron to submit to the examination and to postpone the scheduled hearing pursuant to § 42–15–80. Aaron filed an objection to this motion.

By order dated October 17, 1997, the single commissioner summarily denied Employer's motion without hearing or argument. Employer filed a Form 30 requesting review by the full Commission. However, pending this appeal, the single commissioner issued an order dated December 5, 1997, awarding Aaron workers' compensation benefits based on a hearing held on October 23, 1997. Employer filed an additional Form 30 request for review as a result of the December order.

Additionally, by order dated January 12, 1998, the single commissioner again denied Employer's motion to compel a medical evaluation or suspend the proceedings. Employer filed a third Form 30 requesting full Commission review of the

single commissioner's denial of its motion, although a hearing on the merits had already taken place.

The three Form 30s were consolidated for appeal. By order dated June 16, 1998, the full Commission reversed the single commissioner's orders dated October 17, 1997 and January 12, 1998, finding Aaron's rights to compensation and to take or prosecute any proceedings against Employer were suspended by his failure to submit to an independent medical examination ("IME"), as required by § 42–15–80. As a result of finding Aaron's right to prosecute was suspended, the full Commission vacated the order of the single commissioner dated December 5, 1997, which awarded Aaron benefits, because the October 23, 1997, hearing was improperly convened. Aaron appealed this order to the Circuit Court, which affirmed the decision of the full Commission. This appeal follows.

### *LAW/ANALYSIS*

Aaron argues the Circuit Court erred in affirming the full Commission's order, which held Aaron's rights to compensation and to take or prosecute any proceedings against Employer were suspended because of his failure to submit to a medical examination, as required by § 42–15–80. We agree.

Section 42–15–80 provides:

> After an injury and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Commission, **shall submit** himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Commission. The employee shall have the right to have present at such examination any duly qualified physician or surgeon provided and paid by him. No fact communicated to or otherwise learned by any physician or surgeon who may have attended or examined the employee, or who may have been present at any examination, shall be privileged, either in hearings provided for by this Title or any action at law brought to recover damages against any employer who may have accepted the compensation provisions of this Title. *If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his*

*right to take or prosecute any proceedings under this Title shall be suspended until such refusal or objection ceases and no compensation shall at any time be payable for the period of suspension unless in the opinion of the Commission the circumstances justify the refusal or obstruction.* The employer or the Commission may in any case

of death require an autopsy at the expense of the person requesting it.

(emphasis added).

Our Supreme Court first addressed a claimant's refusal to submit to an IME in *Hill v. Skinner*, 195 S.C. 330, 11 S.E.2d 386 (1940). The *Hill* Court recognized the trial court's determination that where a claimant refuses to submit to a physical examination upon the request of the duly authorized agent of the employer and the court can find no justification for his refusal to submit to the examination, the mandatory provisions of Section 27 of Act No. 610, 1936 Acts 1231 ("Section 27")[1] become operative and the claimant is not entitled to compensation for the period that elapsed between the time of his refusal and the time when such refusal ceased. *Id.* at 338, 11 S.E.2d at 390.

In *Wardlaw v. J.G. Ridgeway Construction Co.*, 212 S.C. 116, 46 S.E.2d 662 (1948), the claimant was suffering from a back injury. The physician desired to perform a spinal puncture on the claimant to complete his diagnosis. The claimant averred he was afraid of the puncture and afraid "to be worked on in the spinal part anywhere at all." *Id.* at 119, 46 S.E.2d at 663. Further, he knew of people who had been disabled as the result of such treatment and a friend, he said, had died from a "spinal shot." *Id.* The Court held that where no medical evidence was submitted on the issue whether the spinal puncture was dangerous, the employee was not justified in refusing to submit to the spinal puncture because of an unfounded fear of danger. *Id.* at 121, 46 S.E.2d at 664.

---

1. Section 42–15–80 contains substantially the same language as Section 27 and all other subsequent code sections that required the submission of the claimant to independent medical examination. *See* 1962 Code § 72–307; 1952 Code § 72–307; 1942 Code § 7035–30.

The first case in which the Supreme Court determined a claimant's refusal to submit to an examination was justified was *Ward v. Dixie Shirt Co.*, 223 S.C. 448, 76 S.E.2d 605 (1953). In *Ward*, the claimant refused to undergo a spinal myelogram test by a Spartanburg neurosurgeon selected by her employer's insurer. The claimant's primary care physician, the doctor initially assigned to claimant by her employer, believed the claimant's condition required the "most expert neurological opinion" and referred her to an orthopedic surgeon and a neurosurgeon at Emory University in Atlanta. *Id.* at 453, 76 S.E.2d at 607. The claimant wanted to pursue the course of treatment prescribed by her primary care physician. The employer sought to suspend the claimant's compensation payments until the claimant reported to the Spartanburg neurosurgeon. A single commissioner, finding the evidence relating to the claimant's condition warranted her refusal to be treated by the employer's designated specialist, denied the employer's request. *Id.* at 454, 76 S.E.2d at 608. The commissioner further ordered the employer and its insurer to defray the claimant's costs of examination by the Emory surgeons. *Id.* The full Commission and Circuit Court affirmed. *Id.* Hence, the claimant's rights under the Workmen's Compensation Act were not suspended for her refusal.

In reaching its decision, the *Ward* Court articulated the proper standard of review for the determination of justification on the part of the claimant. The Court stated:

> Where the facts are disputed and are subject to more than one reasonable inference as to whether the employee is justified in refusing to submit to an examination requested by his employer, the conclusion of the Industrial Commission thereabout is final. But where the circumstances warrant only one reasonable inference, the question becomes one of law rather than of fact and the decision of the Industrial Commission is subject to review.

*Id.* at 455, 76 S.E.2d at 608 (citation omitted).

Similarly, the Court in *Singleton v. Young Lumber Co.*, 236 S.C. 454, 114 S.E.2d 837 (1960), found the claimant's refusal to submit to a medical examination requested by his employer was justified. The claimant had previously seen three other physicians. These physicians examined him, rated him as to

his physical impairment, and testified in the case. The claimant fully cooperated with these doctors during his numerous visits to them, which often entailed the claimant making day-long trips to receive treatment. In light of his cooperation, the Court found no reason to penalize the claimant due to his refusal to undergo additional examination and testing. *Id.* at 463, 114 S.E.2d at 841.

In *Ford v. Allied Chemical Corp.*, 252 S.C. 561, 167 S.E.2d 564 (1969), the claimant had seriously injured his neck in a workplace accident. He was put under the care of the company doctor, a general practitioner. The company doctor, determining the claimant's condition required the attention of a specialist, referred the claimant to an orthopedic surgeon. The claimant saw the specialist. The claimant communicated his symptoms to the orthopedic surgeon; however, the doctor was not "impressed" with the claimant's complaints and discharged him, suggesting he "buy some aspirin and return to work." *Id.* at 565, 167 S.E.2d at 566. Unsatisfied and continuing to suffer from pain, claimant sought the services of another orthopedic surgeon, whereby the claimant was admitted to the hospital. The carrier for the employer demanded the claimant immediately put himself back under the company doctor's care. The claimant did not comply with this request. The claimant later made a claim to the Industrial Commission for compensation and medical benefits. The employer denied liability, asserting the claimant refused the treatment it had offered to him. Upon its review, the Supreme Court upheld the determination, finding the claimant's lack of improvement stemming from the employer's treatment justified the claimant's refusal of continued care at his employer's direction. *Id.* at 567, 167 S.E.2d at 567.

This Court addressed the issue of an employee refusing employer-sponsored medical care in *Scruggs v. Tuscarora Yarns, Inc.*, 294 S.C. 47, 362 S.E.2d 319 (Ct.App.1987). In *Scruggs,* the employer scheduled a myelogram for the claimant who had injured her back at work. The claimant was a 61–year–old with a heart condition. She was advised by her physician a myelogram was not to be taken lightly due to her age and health. Additionally, the doctor told the claimant that subsequent orthopedic surgery would likely not improve her condition. She therefore did not pursue further care from the

employer's physicians. The single commissioner found the claimant suffered a total and permanent disability of 50% and should receive weekly compensation for a period not to exceed 500 weeks. *Id.* at 49, 362 S.E.2d at 321. The full Industrial Commission and Circuit Court affirmed. *Id.* at 48, 362 S.E.2d at 320. On appeal to the Court of Appeals, the employer contended the award was erroneous because the claimant did not submit to medical treatment. This Court disagreed, finding sufficient evidence existed supporting the commission's findings that the claimant's refusal to accept treatment was justified due to its potential limited efficacy. *Id.* at 50, 362 S.E.2d at 321.

It is strikingly strange that Employer honored a referral of Aaron by Dr. Golay to Dr. Lynch, but would not approve Aaron's referral to Dr. Drye. The record reveals Dr. Golay was the treating physician of Aaron. Dr. Golay was Employer's physician.

The Commission, in its order, stated:

The law as prescribed in the Workers' Compensation Act and the greater weight and preponderance of the evidence supports the finding that the Claimant unjustifiably refused to submit to a medical examination requested and provided for by the Defendants.

The ruling by the Commission is conclusory at best. There are no factual bases for the statement. The order of the Commission is violative of the statute. The statute mandates the exercise of discretion in analyzing the factual scenario in totality. Simply put, this was not done.

### CONCLUSION

We remand this matter to the Circuit Court to further remand to the full Workers' Compensation Commission for the purpose of making a factual determination, pursuant to § 42–15–80, whether Aaron's refusal was justified under all of the surrounding circumstances.

For the foregoing reasons the order of the Circuit Court is **REVERSED AND REMANDED.**

HEARN, C.J. and STILWELL, J., concur.