# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Patricia Pate, Employee/Claimant, Appellant,

v.

College of Charleston, Employer, and State Accident Fund, Carrier, Respondents.

Appellate Case No. 2019-001064

---

Appeal From The Workers' Compensation Commission

---

Opinion No. 5925
Heard April 12, 2022 – Filed July 20, 2022

---

## REVERSED AND REMANDED

---

Stephen Benjamin Samuels, of Samuels Reynolds Law Firm LLC, of Columbia and Max Capper Sparwasser, of Max Sparwasser Law Firm, LLC, of Mount Pleasant, both for Appellant.

Margaret Mary Urbanic, of Clawson & Staubes, LLC and Mikell Holbrook Wyman, of Wyman Law Firm, LLC, both of Charleston; Page Hilton, of South Carolina Legislative Counsel, of Wedgefield; and Kirsten Leslie Barr, of Trask & Howell, LLC, of Mount Pleasant, all for Respondents.

---

**HEWITT, J.:** This is an appeal from the Workers' Compensation Commission. The case is about whether the commission properly limited Patricia Pate to an award for

a back disability and whether the commission erred when it determined she has lost a lesser degree of the use of her back than she claimed.

There is ample evidence Pate's back injury affects other parts of her body. It was thus a legal error for the commission to reject Pate's request that she be allowed to consider an award under the "general disability" regime by summarily stating her claim was limited to the back without providing any analysis.

Pate also argues the only conclusion supported by the evidence is that she is permanently and totally disabled. Though the restrictions in this case are extensive, we do not think we can say the forty percent loss of use finding is clearly erroneous. As noted above, the commission has not yet done a substantive weighing of Pate's claim under the general disability regime. We therefore reverse and remand for the commission to evaluate Pate's claim for a general disability award.

**FACTS**

We will try to abbreviate the facts as much as possible. Pate worked at the College of Charleston's copy center. She hurt her back at work in December 2011.

The injury was severe enough to warrant surgery in May 2012. Pate's surgeon assigned a forty percent impairment rating to the spine and a thirty-six percent rating to the whole person.

Pate's long-term treatment regimen after surgery included sacroiliac (SI) joint injections, trigger point injections, epidural steroid injections, a TENS unit, and pain medications (OxyContin, Percocet, and Tizanidine). For reasons that matter later in our analysis, we will mention that the surgeon said he increased Pate's impairment rating by ten percent in an effort to account for chronic pain caused by the injury.

Pate returned to work but remained on pain medication and received injections approximately every two months. In August 2014—over two years after Pate's back surgery—the authorized treating physician referred Pate to a clinical psychologist for an evaluation and possible treatment for depression. He also started Pate on an antidepressant and nerve pain medication, noting Pate was significantly depressed.

The next point we should mention is that Pate was hospitalized shortly after that (in September 2014) with blood clots in her lungs. This resulted in increased pain medication and prevented her from receiving her injection therapy for several months. The blood clots also prevented her from working.

Pate was approved to return to work in December 2014, but for only four hours per day; four days per week; no lifting more than fifteen pounds; no bending, squatting, crawling, or pushing heavy objects; and with a reevaluation scheduled two weeks later. Pate's restrictions did not change. The College placed her on leave without pay in January 2015 after determining that it could not accommodate her restrictions.

The case had a lengthy journey at the commission. Pate alleged injuries to her back, legs, and psyche (depression). The College admitted an injury to Pate's back only. The College also claimed the blood clots in Pate's lungs were an "intervening act" and that all of Pate's current medical treatment and impairments resulted from the clots, not from her back injury.

The single commissioner agreed with the College that Pate's embolisms were an intervening event, awarded the case as a "back only" claim, and did not award any future medical treatment. Pate appealed. The appellate panel affirmed in part, reversed in part, and remanded. The panel reversed the single commissioner's finding that the blood clots were an intervening act and remanded for the single commissioner to determine Pate's degree of disability and to award causally related medical treatment.

On remand, the single commissioner found Pate's injury only affected her back, that she sustained a forty percent permanent partial disability, and that Pate was entitled to future medical treatment including SI joint injections, trigger point injections, epidural steroid injections, a TENS unit, pain medication, and a lumbar back brace.

Pate appealed to the appellate panel again, raising the same arguments she raises here. The appellate panel affirmed. This appeal followed.

## ISSUES

1. Whether the commission erred in finding this was a "single member" case and limited Pate to an award for a back injury.

2. Whether the commission erred in failing to find Pate permanently and totally disabled; either because of her extensive restrictions or because the commission allegedly erred in concluding she had not lost more than fifty percent of the use of her back.

## THE SINGLE MEMBER DEFENSE

The Workers' Compensation Act has two methods of compensation. General disability is codified at sections 42-9-10 and -20 of the South Carolina Code (2015). Scheduled recovery is codified at section 42-9-30 of the South Carolina Code (2015).

If a worker with a single injury to a body part listed in the scheduled recovery statute—say, a back or arm injury—wishes to pursue a general disability award, the worker must show that the injury affects other parts of the worker's body. *Brown v. Owen Steel Co.*, 316 S.C. 278, 280, 450 S.E.2d 57, 58 (Ct. App. 1994); *Singleton v. Young Lumber Co.*, 236 S.C. 454, 471, 114 S.E.2d 837, 845 (1960). Pate made such a claim here. She claims her back injury has caused pain radiating into other parts of her body and pain-related depression.

The record indicates no less than forty physician notes about Pate having nerve pain in places other than her back. They commonly reference pain in her left leg and hip. There are also numerous references in the record to various symptoms radiating from Pate's back to her knee, diminished sensation throughout her left lower extremity, and stabbing pain in her buttocks and thigh. A functional capacity evaluation reported that Pate exhibited an altered gait secondary to pain. We mentioned in the earlier background that the authorized treating physician added ten percent to his impairment rating for Pate's back because of her chronic pain, prescribed Pate an antidepressant, and referred her to a psychologist. The psychologist confirmed a diagnosis of major depressive disorder. There is thus no doubt that the record contains ample markers of a colorable claim that the effects of Pate's back injury extend beyond her back.

Neither the single commissioner nor the appellate panel gave any analysis in deciding this was a single member case. The commission's decision simply proclaims "[t]his is a single-member injury affecting Claimant's lower back only" and that Pate was limited to the scheduled recovery statute.

The law instructs us to affirm the commission's factual findings unless they are clearly erroneous in view of the reliable, probative, and substantial evidence in the record. S.C. Code Ann. § 1-23-380(5)(e) (Supp. 2021). But the law also instructs that the commission's final decision must include "a concise and explicit statement of the underlying facts" that support its findings. S.C. Code Ann. § 1-23-350 (2005); *see also Able Commc'ns, Inc. v. S.C. Pub. Serv. Comm'n*, 290 S.C. 409, 411, 351 S.E.2d 151, 152 (1986) ("The findings of fact of an administrative body must be sufficiently detailed to enable the reviewing court to determine whether the findings

are supported by the evidence and whether the law has been properly applied to those findings."). Here, we have no idea why the commission rejected Pate's argument that her back injury was causing complications in other parts of her body. We cannot say whether the commission erred or was correct in its reasoning. The commission gave no reasoning in its order.

The College argues we can affirm because the only conclusion supported in the record is that Pate's leg pain was off-and-on, mild, and that no physician has diagnosed Pate with a mental injury related to the work accident. We respectfully disagree. The references to complications in other parts of Pate's body show up in records throughout her multi-year course of treatment, and two physicians—Dr. Nolan and Dr. Kee—diagnosed Pate with depression. Dr. Nolan was the authorized treating physician for Pate's back injury. Dr. Kee is the psychologist who evaluated Pate at Dr. Nolan's request. Dr. Nolan prescribed Pate an antidepressant. The pertinent records have repeated references to Pate's back injury and the complications caused by the back injury. We do not think it is fair to say that the evidence in the record leads unquestionably to the finding that Pate's back injury affects nothing more than her back.

## PERMANENT AND TOTAL DISABILITY

Pate's second argument is that rather than remand, we should find she is permanently and totally disabled either because of her extensive restrictions or because the commission allegedly erred in concluding she had not lost more than fifty percent of the use of her back.

We will take these arguments in reverse. Under the scheduled recovery statute, a worker who has lost more than fifty percent of the back is presumed to be permanently and totally disabled. *See* § 42-9-30(21). The commission found Pate sustained permanent partial disability of forty percent of her back. This corresponded precisely with the impairment rating to the spine assigned by Pate's surgeon.

Several things support Pate's argument that her award must be greater than her medical impairment. She points us to a medical authority explaining that impairment ratings should not be used to estimate the degree of disability. *See generally* Linda Cocchiarella & Gunnar B.J. Andersson, *Guides to the Evaluation of Permanent Impairment* 9 (5th ed. 2000). She also points us to numerous cases where the disability awards exceed the impairment ratings. *E.g. Linen v. Ruscon Constr. Co.*, 286 S.C. 67, 68-69, 332 S.E.2d 211, 212 (1985) (affirming a finding of greater

than fifty percent loss of use of the back when highest rating to back was twenty to thirty percent).

Even if we found it was error to limit Pate's award to the precise amount of her impairment rating, we do not think we could go so far as to say the evidence in the record supports no conclusion other than that Pate has lost more than fifty percent of the use of her back. Pate claims it is clear that she is permanently and totally disabled and that we can "work backwards" from that to conclude that she must have lost more than fifty percent of the use of her back. We are not so sure. Would we say the commission clearly erred if it found Pate had lost forty-eight percent of her back but that Pate was permanently and totally disabled because of the effects her back injury caused in other parts of her body? We do not know, and we do not have that sort of order before us. Weighing impairment ratings as part of arriving at a percentage of disability strikes us as a task that the Legislature envisioned entrusting to members of the commission, not to us.

There is certainly evidence of permanent and total disability in the record. The restrictions are extensive, and total disability does not require helplessness. "The generally accepted test of total disability is inability to perform services other than those that are 'so limited in quality, dependability, or quantity that a reasonably sta[bl]e market for them does not exist.'" *Wynn v. Peoples Nat. Gas Co. of S.C.*, 238 S.C. 1, 12, 118 S.E.2d 812, 818 (1961) (quoting *Lee v. Minneapolis St. Ry. Co.*, 41 N.W.2d 433, 436 (Minn. 1950)).

But as we noted in the section discussing the single member defense, the commission has not evaluated Pate's claim for compensation under the general disability regime. Though we do not wish to prolong this case for the parties or to add to the commission's workload, we hold it is not appropriate for us to evaluate the merits of this argument before the commission has spoken.

We respectfully reject the College's argument that Pate's blood clots in her lungs are an intervening cause of her present ailments as a matter of law and that we can avoid Pate's claim for permanent and total disability. The appellate panel rejected this argument, and we likewise reject the College's contention that the only conclusion with support in the record is that Pate's current and substantial work restrictions have no relation to her back injury.

**CONCLUSION**

For the foregoing reasons, we reverse and remand. We do not wish to prevent the commission from following whatever procedures it deems appropriate for expeditiously adjudicating the claim. We envision that, at a minimum, the commission will evaluate the substance of Pate's general disability claim.

**REVERSED AND REMANDED.**

**THOMAS and MCDONALD, JJ., concur.**